**Jerry TURNER, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 49A02–0012–CR–769.**

Court of Appeals of Indiana.

July 31, 2001.

Transfer denied Oct. 17, 2001.

Victoria Ursulskis, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Nandita G. Shepherd, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Following a jury trial, Jerry Turner was convicted of Kidnapping, a Class A felony, and adjudicated as an Habitual Offender. The trial court sentenced him to an enhanced term of fifty years and imposed $125 in costs and a $1,000 public defender reimbursement fee. Turner appeals his conviction and sentence and presents three issues for our review, which we restate as:

1. Whether the State presented sufficient evidence to support his kidnapping conviction.

2. Whether the trial court's jury instruction on accomplice liability constituted fundamental error.

3. Whether the trial court erred when it imposed $125 in costs and a $1,000 public defender reimbursement fee.

We affirm in part, reverse in part and remand with instructions.

## FACTS AND PROCEDURAL HISTORY

At approximately 1:00 a.m. on February 24, 2000, Arnold Curry, Jr. was visiting with relatives at his aunt's home in Indianapolis. After leaving the residence, Curry got into his car and made a call on his cellular phone. Just then, Marlon Coleman and Prentis Shelton approached Curry on foot, demanded that he hand over all his money and jewelry, and climbed into the car after brandishing a revolver and a shotgun. As Coleman drove Curry's car away from the scene, with Shelton holding a gun to Curry's head, a white Grand Am followed them and pulled alongside as the two cars stopped on a nearby side street. Turner, who was a passenger in the Grand Am, conversed briefly with Coleman and Shelton and then followed them to a nearby location. Coleman and Shelton ordered Curry out of the car and began, along with Turner, to kick and beat Curry, as he lay helpless on the ground. The men then stripped Curry to his underwear, duct-taped his hands behind his back, and shoved him into the trunk of Curry's car. Curry's cousin witnessed the abduction and phoned police, who soon thereafter stopped both vehicles and rescued Curry from the trunk. Turner fled the scene on foot and managed to elude capture. However, police arrested him at a gas station a few days later after Curry identified Turner from a photo lineup.

The State charged Turner[1] with, among other things, kidnapping and being an habitual offender, and a jury later found Turner guilty as charged. The trial court entered judgment of conviction,[2] sentenced Turner to an enhanced fifty-year term, and imposed $125 in costs and a $1,000 public defender reimbursement fee. This appeal followed.

## DISCUSSION AND DECISION

### A. Sufficiency of the Evidence

■ Turner argues initially that the State failed to present sufficient evidence to support his kidnapping conviction. When reviewing a challenge to the sufficiency of the evidence, we do not reweigh the evidence or judge the credibility of witnesses. *Wallace v. State*, 722 N.E.2d 910, 912 (Ind.Ct.App.2000). We are constrained to consider only that evidence most favorable to the verdict together with all reasonable and logical inferences to be drawn therefrom. *Davis v. State*, 524 N.E.2d 305, 306 (Ind.1988). The conviction will be affirmed if evidence of probative value exists from which a jury could find the defendant guilty beyond a reasonable doubt. *Ruth v. State*, 706 N.E.2d 257, 258 (Ind.Ct.App.1999).

■ To convict a person of kidnapping, the State must prove that he: (1) knowingly or intentionally; (2) by fraud, enticement, force, or threat of force; (3) removed from one place to another; (4) another person; (5) while hijacking a vehicle. *See Wilson v. State*, 468 N.E.2d 1375, 1377 (Ind.1984) (citing Indiana Code Section 35–42–3–2(b)). Here, the State

---

1. The State also charged Coleman and Shelton with kidnapping, robbery, and criminal confinement and Coleman with Carrying a Handgun Without a License.

2. The State also charged Turner with Robbery and Criminal Confinement, and the jury found him guilty of those charges. The trial court however imposed conviction and sentence only on the kidnapping charge.

sought to convict Turner as an accomplice. To do so, the State needed to prove that Turner knowingly or intentionally aided, induced, or caused another person to commit kidnapping, regardless of whether that other person had been prosecuted, convicted, or acquitted of that offense. *See Sanquenetti v. State,* 727 N.E.2d 437, 441 (Ind. 2000) (citing to Indiana Code Section 35–41–2–4). There is no separate crime of being an accessory or aiding and abetting the perpetrator of a crime; rather, a defendant may be convicted as a principal upon evidence that he aided or abetted in the perpetration of the charged crime. *Id.* The individual who aids another person in committing a crime is as guilty as the actual perpetrator. *Id.*

Factors considered by the factfinder to determine whether a defendant aided another in the commission of a crime include: (1) presence at the scene of the crime, (2) companionship with another engaged in a crime, (3) failure to oppose the commission of the crime, and (4) the course of conduct before, during, and after the crime occurred. *Garland v. State,* 719 N.E.2d 1236, 1237 (Ind.1999). While the defendant's presence during the commission of the crime or his failure to oppose the crime are, by themselves, insufficient to establish accomplice liability, the jury may consider them along with other facts and circumstances tending to show participation. *Id.* at 1238. In order to sustain a conviction as an accomplice, there must be evidence of the defendant's affirmative conduct, either in the form of acts or words, from which an inference of common design or purpose to effect the commission of a crime may be reasonably drawn. *Peterson v. State,* 699 N.E.2d 701, 706 (Ind. Ct.App.1998).

Here, there was sufficient probative evidence from which the jury could have inferred that Turner was an accomplice in Curry's abduction. Curry's cousin, Robert Howard, testified that he saw Curry and two other men sitting in the Cadillac. As Howard exited the house, a man in a white coat standing at the corner of the block "[ran] to a '90 model Grand Am, cut the lights off and ... left." Record at 199. The Grand Am then circled the block and followed the Cadillac as it drove off with Curry inside. Further, Curry testified that he recognized Turner as the passenger in the Grand Am that followed and then pulled along side the Cadillac. After talking briefly with Curry's abductors, Turner and the driver of the Grand Am followed the Cadillac to a different location. Curry exited the car and recalled seeing Turner, who was wearing a "white coat," step out of the Grand Am before Coleman and Shelton ordered Curry to lie face-down on the ground. Record at 193. In addition, Indianapolis Police Officer Michelle Floyd testified that, after police stopped both cars later that morning, she searched the Grand Am and recovered a pair of "plastic or rubber gloves" from the car's floorboard as well as a handgun and "sawed-off shotgun" from the trunk. Record at 278, 288. From this evidence the jury could have reasonably inferred that Turner knowingly or intentionally aided Coleman and Shelton in abducting Curry.

## B. Accomplice Liability Jury Instruction

Turner next asserts that the trial court gave an erroneous accomplice liability instruction to the jury. Specifically, Turner alleges that the court's instruction confused and misled the jury and that it placed undue emphasis on certain evidence. We do not agree.

Jury instructions are solely within the discretion of the trial court, and we will reverse only if the court abuses that discretion. *Young v. State,* 696 N.E.2d 386, 389 (Ind.1998). The instruc-

tion should inform the jury regarding the law applicable to the facts without misleading it and should enable the jury to understand the case and arrive at a just, fair, and correct verdict. *Id.* In considering whether error has resulted from refusing or giving a tendered instruction, the reviewing court determines whether the instruction correctly states the law, whether there is evidence in the record to support the giving of the instruction, and whether the substance of the instruction is covered by other instructions which are given. *See Id.*

 Because Turner failed to make a timely objection to the accomplice liability instruction at trial, he urges us to review the trial court's accomplice liability instruction for fundamental error. *See Geiger v. State,* 721 N.E.2d 891, 895 (Ind. Ct.App.1999). To be deemed fundamental, the error must be a substantial blatant violation of basic principles that renders a trial unfair to a defendant. *Id.* Fundamental error must be so prejudicial to the rights of the defendant as to make a fair trial impossible. *Id.*

The giving of the accomplice liability instruction here was not fundamental error. That portion of the instruction that Turner complains was erroneous reads as follows:

> Proof of the Defendant's failure to oppose the commission of a crime, companionship with the person committing the offense, and conduct before and after the offense may be considered in determining whether aiding may be inferred. Mere presence at the scene of an alleged crime or failure to oppose the crime is not, in [and] of itself, aiding inducing or causing the commission of a crime. Neither is negative acquiescence sufficient standing alone.

Supplemental Record at S–24. As we have already noted, while a defendant's pres-

ence during or failure to oppose the crime are, by themselves, insufficient to establish accomplice liability, they may be considered along with defendant's relation to or companionship with the others and defendant's actions before, during and after the crime. *See Hodge v. State,* 688 N.E.2d 1246, 1248 (Ind.1997). Moreover, Turner fails to explain how the trial court's jury instruction was "unnecessarily emphatic of certain evidence" (Brief of Appellant at 13), and our review of the record does not show that the instruction improperly emphasized any evidence offered at trial. The trial court's instruction was an accurate statement of the law of accomplice liability, and the instruction was not fundamental error.

## C. Costs and Fees

 Turner also contends that the trial court erred when it imposed, as part of his sentence, $125 in costs and a $1,000 public defender reimbursement fee. Turner complains, in particular, that the trial court erred when it failed to conduct an indigency hearing before imposing such obligations, and that the $1,000 public defender reimbursement fee exceeded statutory limits. Sentencing decisions are within the discretion of the trial court and will be reversed only upon a showing of abuse of that discretion. *Jones v. State,* 698 N.E.2d 289, 291 (Ind.1998).

 Indiana Code Section 33–19–2–3(a) provides, in relevant part, that "[w]hen the court imposes costs, it shall conduct a hearing to determine whether the convicted person is indigent." However, when a trial court becomes aware of a defendant's indigent status through the appointment of pauper appellate counsel and expressly states that the defendant shall not be imprisoned for failing to pay the

levied fines or costs, as in this case[3], no separate indigency hearing need be conducted. *See Whitehead v. State,* 511 N.E.2d 284, 296 (Ind.1987) (interpreting Indiana Code Section 35–38–1–18(a)); *see also Ridley v. State,* 690 N.E.2d 177, 182 (Ind.1997) (interpreting Indiana Code Section 35–38–1–18(a); affirming trial court's imposition of fines and costs in absence of separate hearing where the court knew of defendant's indigency status through appointment of pauper appellate counsel, but remanding to trial court for inclusion of language in sentencing order indicating defendant shall not be imprisoned for his failure to pay).[4] Here, the Marion County Public Defender's Office represented Turner at trial and at sentencing. The trial court, therefore, knew of Turner's indigent status and did not abuse its discretion when it imposed upon him $125 in costs.

As for Turner's final argument, we conclude that the trial court abused its discretion when it imposed a $1,000 public defender reimbursement fee. Indiana Code Section 35–33–7–6(c) states:

> If the court finds that the person is able to pay part of the cost of representation by the assigned counsel, the court shall order the person to pay the following:
>
> (1) For a felony action, a fee of one hundred dollars ($100).[5]

Trial courts may deduct additional money to cover public defender costs from a defendant's posted cash bond pursuant to Indiana Code Section 35–33–8–3.2. *See Obregon v. State,* 703 N.E.2d 695, 696 (Ind. Ct.App.1998). Such is not the case here, however, as Turner posted no bond and was incarcerated following his arrest through the conclusion of his trial.

In addition, we note that while Indiana Code Sections 33–9–11.5–6 and 33–19–2–3 grant trial courts the discretion to impose representations costs against a defendant in excess of one $100, those statutes do not apply in this instance. Indiana Code Section 33–9–11.5–6 applies only in those situations where "the court makes a finding of ability to pay the costs of representation," while Indiana Code Section 33–19–2–3 applies only to those defendants that the court deems "not indigent." Here, the trial court found defendant indigent for the purposes of appointing a public defender and then renewed its indigency finding when it appointed pauper appellate counsel. The trial court never declared Turner "not indigent" or otherwise determined that he had the ability to pay the cost of representation. The only statutory means at the trial court's disposal for imposing costs on Turner was therefore Indiana Code Section 35–33–7–6(c), which caps

---

**3.** At sentencing, the trial court imposed $125 in costs, a $1,000 public defender reimbursement fee, and stated that Turner "will not be incarcerated for his [failure] to pay these financial costs." Record at 439. However, the trial court's abstract of judgment does not reflect these orders.

**4.** We have previously held that trial courts are required by Indiana Code Section 33–19–2–3(a) to conduct an indigency hearing before imposing costs on a defendant (*Everroad v. State,* 730 N.E.2d 222, 227 (Ind.Ct.App. 2000)), and that the finding of indigency for purposes of appointing defense counsel is not determinative of a defendant's ability to pay court costs and fines. *Meeker v. State,* 182

Ind.App. 292, 395 N.E.2d 301, 307 n. 5 (Ind. Ct.App.1979); *see Marshall v. State,* 505 N.E.2d 853, 857 (Ind.Ct.App.1987). However, these cases are distinguishable from, if not at odds with, our supreme court's interpretation in *Whitehead* and *Ridley*. We must follow the supreme court's interpretation.

**5.** We note that Indiana Code Section 35–33–7–6 contains no language requiring trial courts to conduct a separate indigency hearing before imposing fees, and we decline Turner's invitation to hold that such a hearing is necessary in order to impose fees under this statute.

such costs for a felony at $100.[6] Thus, the trial court exceeded its statutory authority when it assessed Turner a reimbursement fee of more than $100.

### CONCLUSION

In sum, we reverse the trial court's assessment of a $1,000 public defender reimbursement fee and remand with instructions to modify its sentencing order to reflect a reimbursement fee of $100 and to include that modification in its abstract of judgment. We further instruct the trial court to modify its abstract of judgment to reflect the entirety of its order at sentencing, including the imposition of $125 in costs and a statement that Turner shall not be imprisoned for failing to pay the costs and fee assessed. In all other respects, we affirm the trial court's judgment.

Affirmed in part, reversed in part and remanded with instructions.

DARDEN, J., and BARNES, J., concur.

---

6. Although Indiana code Section 35–33–7–6 contemplates that a court shall determine a defendant's indigency "[p]rior to the completion of the initial hearing," the statute does not require the trial court to order defendant to pay, at that point, the appropriate fee (either $50 or $100), if any. The court may, as it did in this case, wait until sentencing to impose such costs. Indeed, this result follows directly from the fact that section (d) of the statute allows a trial court to "review the finding of indigency at any time during the proceedings" and, presumably, to adjust or impose any contemplated fee in accordance with its indigency determination.