**Namon MATHIS, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 49A02–0202–CR–172.**

Court of Appeals of Indiana.

Oct. 30, 2002.

Victoria Ursulskis, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Ellen H. Meilaender, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAKER, Judge.

Appellant-defendant Namon Mathis appeals his convictions for Murder,[1] a felony, and Carrying a Handgun Without a License,[2] a class A misdemeanor. Specifically, Mathis argues that: (1) the trial court erred in excluding evidence demonstrating that another individual may have committed the murder; (2) double jeopardy principles were violated when the trial court entered judgments of conviction and sentenced Mathis on both counts; and (3) the trial court assessed a public defender fee and costs in excess of that permitted by statute. We affirm in part, reverse in part, and remand for a reduction of the public defender fee that was assessed against Mathis.

### FACTS

The facts most favorable to the verdict are that on April 14, 2001, Mathis and Patrice Osborne were passengers in a vehicle driven by Bryant Stone. At one point, Mathis accused Osborne of stealing some money from him. Mathis told Stone to stop the vehicle, whereupon Osborne stabbed Mathis with a small knife. Osborne then opened the car door and started to run. Mathis chased Osborne, armed with a semi-automatic 9mm gun, and shot her several times.

One of the bullets entered Osborne's lower back and traveled to the front of her abdomen, damaging her left kidney, spleen, stomach and small intestine. A second bullet entered Osborne's left buttock and traveled through an artery. This bullet damaged her bladder and rectum and caused severe internal bleeding. Osborne died from the wounds and it was determined that the injuries from either bullet would have been fatal.

After the shooting, Mathis went to the residence of Stone's sister. He told Tracy Blow, who was house-sitting, that he had been stabbed. Mathis then gave Blow the gun with which he shot Osborne and directed her to hide it in a bedroom closet. Mathis admitted to Blow that he chased Osborne and shot her.

Later that evening, one of the investigating detectives secured a search warrant for the house where Blow hid the gun. During the course of a search, the police found the loaded semi-automatic in the closet. It was subsequently discovered that Mathis's fingerprints were on the gun's magazine. Forensic evidence established that a bullet and two spent shell casings found near Osborne's body and some bullet fragments removed from the body had been fired from that gun.

As a result of the incident, Mathis was charged with the above offenses. Prior to trial, the State filed a motion in limine to prevent Mathis from introducing evidence that the gun involved in this instance had been used in an earlier, unrelated shooting. The trial court granted the motion, but indicated that it was leaning toward admitting the evidence if Mathis could demonstrate how it was relevant.

At trial, Mathis requested permission to elicit this evidence after establishing that the suspect's name in the prior shooting was "Anthony Stone" and that Bryant Stone's middle name was "Anthony." Tr. p. 100, 195–96. Thus, it was Mathis's objective to argue that Bryant had been the shooter in this instance. The trial court then determined that there was no evidence to connect anyone but Mathis to the gun on the evening of the shooting and,

1. Ind.Code § 35–42–1–1.

2. Ind.Code § 35–47–2–1.

therefore, denied his request to admit the evidence. During Mathis's offer to prove, one of the investigating detectives testified that "Bryant" and "Anthony" were not the same person because "Anthony's" physical description did not match that of "Bryant." Moreover, identifying information including birth dates, social security numbers and addresses were different. Thus, the trial court affirmed its earlier ruling, stating that the evidence was too tenuous to show that Bryant and Anthony were the same person. As a result, it was determined that Bryant could not be linked to the earlier shooting.

Following the trial that concluded on November 27, 2001, the jury convicted Mathis on both counts. Thereafter, he was sentenced to concurrent terms of fifty-five years on the murder charge and one year on the handgun conviction. The trial court also imposed a $200 public defender fee upon Mathis and ordered him to pay $129 in court costs. He now appeals.

### DISCUSSION AND DECISION
#### I. Exclusion of Evidence

Mathis first claims that the trial court erred in excluding evidence that the gun used to kill Osborne had been used in a prior unrelated shooting. Specifically, Mathis contends that such evidence would have demonstrated that it was more likely that Stone, rather than he, had shot Osborne.

 In resolving this issue, we first note that a reviewing court will reverse a trial court's determination of the admissibility of evidence only when the decision is clearly against the logic and effect of the facts and circumstances. *Smith v. State*, 754 N.E.2d 502, 504 (Ind.2001). Additionally, a trial court's ruling excluding evidence may not be challenged on appeal unless a substantial right of the party is affected. *Lashbrook v. State*, 762 N.E.2d

756, 758 (Ind.2002). Evidence is relevant when it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. *Smith*, 754 N.E.2d at 504. Evidence tending to show that someone else committed the crime in question meets this standard because, logically, such evidence makes it less probable that the defendant committed the crime. *Joyner v. State*, 678 N.E.2d 386, 389 (Ind. 1997).

 Here, the evidence demonstrated that the Anthony Stone connected to the prior shooting was not the same person as the Bryant Stone who was a witness in this case. Moreover, the excluded evidence in no way indicated that Anthony Stone was present when Osborne was shot, much less that he was the individual who shot her. Merely showing that Anthony used the same gun a month earlier does not make it any less likely that Mathis shot Osborne, especially in the absence of any other evidence connecting Anthony to the circumstances here. *See Lashbrook*, 762 N.E.2d at 758 (holding that evidence that a person other than the defendant had stated that the victim "was gonna die" did not connect that other person to the crime or tend to show that that person had committed the crime); *Smith*, 754 N.E.2d at 505 (evidence that the victim had previously threatened other people besides the defendant did not tend to show that anyone other than the defendant had committed the murder).

We also note that the excluded evidence did not tend to show that either Anthony Stone or Bryant Stone had murdered Osborne. To the contrary, the State introduced substantial evidence demonstrating that Mathis was the shooter. Mathis admitted to Blow that he had shot a woman.

He also had her hide the gun that was used in the shooting. Tr. p. 106–09. Moreover, as discussed in the *FACTS*, forensic evidence showed that Mathis's fingerprints were on the magazine found loaded in the gun that was used to shoot and kill Osborne. Bryant Stone's fingerprints were not on the weapon. Tr. p. 174–75, 177. As a result, any knowledge conveyed to the jury that a relative of Bryant Stone had previously used the same gun in an unrelated shooting would not have had any impact on the verdict in this case. Thus, the trial court properly excluded this evidence.

## II. Double Jeopardy

Mathis next contends that his convictions and sentences for both murder and carrying a handgun without a license violate the prohibition against double jeopardy pursuant to Article I, Section Fourteen of the Indiana Constitution. Specifically, Mathis asserts that the handgun conviction may not stand because there was a reasonable possibility that the jury used the same evidence—Mathis's possession of a handgun during the episode of chasing and shooting at Osborne—in finding guilt on the murder charge. Appellant's Br. p. 11.

In addressing this claim, we note that our supreme court has held that Article I, Section Fourteen of the Indiana Constitution provides greater protection than the federal constitution. *Richardson v. State*, 717 N.E.2d 32, 49 (Ind.1999). Recently, our supreme court employed Justice Sullivan's analysis from *Richardson* and concluded that five situations will violate the double jeopardy prohibition of the Indiana Constitution. *Guyton v. State*, 771 N.E.2d 1141, 1143 (Ind.2002) (citing *Richardson*, 717 N.E.2d at 55 (Sullivan, J., concurring)). Quoting from Justice Sullivan's concurrence in *Richardson,* the *Guyton* court noted that the following situations violate Indiana's double jeopardy clause: (1) "con-

viction and punishment for a crime which is a lesser-included offense of another crime for which the defendant has been convicted and punished"; (2) "conviction and punishment for a crime which consists of the very same act as another crime for which the defendant has been convicted and punished"; (3) "conviction and punishment for a crime which consists of the very same act as an element of another crime for which the defendant has been convicted and punished"; (4) "conviction and punishment for the crime of conspiracy where the overt act that constitutes an element of the conspiracy charge is the very same act as another crime for which the defendant has been convicted and punished"; and (5) "conviction and punishment for an enhancement of a crime where the enhancement is imposed for the very same behavior or harm as another crime for which the defendant has been convicted and punished." *Id.*

In addition to the above, our supreme court has determined that convictions for murder and carrying a handgun without a license do not violate double jeopardy principles. *Mickens v. State*, 742 N.E.2d 927, 931 (Ind.2001). Specifically, the court noted "[c]arrying the gun along the street was one crime and using it was another." *Id.* Thus, the *Mickens* court concluded that "[t]he *Richardson* actual evidence test [was] not met." *Id.*

■ Here, apart from using the gun to shoot Osborne, the evidence also shows that Mathis carried the gun while in Stone's car, as he was chasing Osborne in the street, and after the murder when he directed Blow to hide the gun. Tr. p. 33–34, 92, 105–09, 132–37. Put another way, it is apparent here that Mathis committed two distinct criminal acts: he carried a handgun in public without a license and he killed a human being. Thus, Mathis has not received a "conviction and punishment

for a crime that consists of the very same act as another crime for which the defendant has been convicted and punished." *Guyton,* 771 N.E.2d at 1143. No double jeopardy violation has occurred here.

### III. Public Defender Fees and Costs

Finally, Mathis contends that public defender fees and costs were improperly assessed against him. Specifically, he asserts that such assessments exceeded those authorized by statute. We address each assessment in turn.

#### A. Public Defender Fees

In addressing Mathis's claim that the $200 public defender fee imposed upon him by the trial court exceeded the amounts permitted by statute, we first note that Indiana Code section 35–33–7–6 provides in part as follows:

> (c) If the court finds that the person is able to pay part of the cost of representation by the assigned counsel, the court shall order the person to pay the following:
>
>> (1) For a felony action, a fee of one hundred dollars ($100).

■ In *Turner v. State,* 755 N.E.2d 194, 200 (Ind.Ct.App.2001), a panel of this court acknowledged that trial courts may deduct additional money to cover public defender costs from a defendant's posted cash bond pursuant to Indiana Code section 35–33–8–3.2. Such is not the case here, however, as Mathis posted no bond and was incarcerated following his arrest through the conclusion of his trial. Additionally, Indiana Code section 33–9–11.5–6 and Indiana Code section 33–19–2–3 grant trial courts the discretion to impose representation costs against a defendant in excess of $100 in other instances. As we noted in *Turner,* however, Indiana Code section 33–9–11.5–6 applies only in those situations where "the court makes a finding of ability to pay the costs of representation," while Indiana Code section 33–19–2–3 applies only to those defendants that the court deems "not indigent." *Id.*

Here, the State concedes, and we agree, that the trial court did not make an explicit finding that Mathis was able to pay some amount of the cost of his representation. Thus, neither of the above statutes apply in these circumstances that might warrant the imposition of fees above the amount authorized in Indiana Code section 35–33–7–6. *See id.* The only statutory means at the trial court's disposal for imposing the representation costs upon Mathis was Indiana Code section 35–33–7–6(c), which caps such costs for a felony at $100. Thus, the trial court exceeded its statutory authority when it assessed Mathis a reimbursement fee of more than $100. *See id.* As a result, we must remand with instructions that the trial court reduce the public defender fee to $100.

#### B. Court Costs

Turning to the imposition of court costs in this case, Mathis correctly asserts that Indiana Code section 33–19–5–1(a) provides for the collection of $120 in court costs in all criminal actions resulting in a felony conviction. The State points out, however, that the assessment of $129 was not error in light of Indiana Code section 33–19–5–1(b), which provides for the collection of additional fees "if they are required under IC 33–19–6."

■ We review the trial court's imposition of fees for an abuse of discretion. *Like v. State,* 760 N.E.2d 1188, 1193 (Ind. Ct.App.), *modified on reh'g,* 766 N.E.2d 416 (Ind.Ct.App.2002). Indiana Code section 33–19–5–1 lists the various fees that may be collected from a defendant in a criminal action resulting in a felony or misdemeanor conviction. *Kopas v. State,* 699 N.E.2d 1193, 1195 (Ind.Ct.App.1998).

Specifically, subsection (b) of that statute provides:

> In addition to the criminal costs fee collected under this section, the clerk shall collect from the defendant the following fees if they are required under IC 33–19–6:
>
> (1) A document fee.
>
> (2) A marijuana eradication program fee.
>
> (3) An alcohol and drug services program user fee.
>
> (4) A law enforcement continuing education program fee.
>
> (5) A drug abuse, prosecution, interdiction, and correction fee.
>
> (6) An alcohol and drug countermeasures fee.
>
> (7) A child abuse prevention fee.
>
> (8) A domestic violence prevention and treatment fee.
>
> (9) A highway work zone fee.
>
> (10) A deferred prosecution fee (IC 33–19–6–16.2).
>
> (11) A document storage fee (IC 33–19–6–18.1).
>
> (12) An automated record keeping fee (IC 33–19–6–19).
>
> (13) A late payment fee (IC 33–19–6–20).
>
> (14) A sexual assault victims assistance fee (IC 33–19–6–21).

Of the additional fees enumerated in accordance with this subsection, only three were applicable to Mathis: a law enforcement continuing education program fee of three dollars ($3), an automated record keeping fee of two dollars ($2), and a document storage fee of two dollars ($2). Ind.Code §§ 33–19–6–7(c), –18.1, –19. We also note that in addition to the fees listed in section 33–19–5–1, Indiana Code section 33–19–6–

17(a) provides that "In each action in which a defendant is found to have committed a crime, violated a statute defining an infraction, or violated an ordinance of a municipal corporation, the clerk shall collect a jury fee of two dollars ($2)."

Here, the $129 court costs imposed by the trial court fall within the statutory limit for court imposed fees when the law enforcement continuing education program fee, the automated record keeping fee, the document storage fee, and the jury fee are added to the criminal cost fee. We note that in *Like*, the trial court imposed a $125 criminal cost fee, a $3 law enforcement continuing education program fee, a $300 marijuana eradication program fee, and a $1,000 drug abuse interdiction correction fee. 760 N.E.2d at 1191. We observed that a $125 criminal cost fee was in excess of the statutory limit. Thus, the cause was remanded to the trial court with instructions that it reduce the criminal cost fee to $120. *Like*, 766 N.E.2d at 416.

■ In this case, however, it is apparent that the trial court assessed Mathis a fee of $129 under the general label of "court costs." As noted above, there are various fees that may be collected from a defendant in a criminal action besides the criminal costs fee. Thus, we conclude that there is no abuse of discretion when the trial court assesses fees within the statutory limit but only refers to those fees under the general heading of "court costs." As a result, Mathis may not successfully claim that the court costs were excessive.

### CONCLUSION

In light of the disposition of the issues set forth above, we conclude that the trial court properly excluded Mathis's evidence purportedly demonstrating that he did not

commit the charged offenses and further conclude that no double jeopardy violation occurred. While we note that the assessment of $129 in court costs was appropriate, the trial court charged Mathis with excessive public defender fees.

Affirmed in part, reversed in part and remanded for correction of sentence.

VAIDIK and BARNES, JJ., concur.