Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 28 2014, 9:01 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**JILL M. ACKLIN**
Acklin Law Office, LLC
Westfield, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**CHANDRA K. HEIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JOSHUA BASEY, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 48A05-1303-CR-138 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MADISON CIRCUIT COURT
The Honorable David A. Happe, Judge
Cause No. 48C04-1208-FB-1603

**February 28, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BARTEAU, Senior Judge**

## STATEMENT OF THE CASE

Joshua Basey appeals his convictions of attempted aggravated battery, a Class B felony, Ind. Code §§ 35-41-5-1 (1977), 35-42-2-1.5 (1997); and criminal confinement resulting in bodily injury, a Class C felony, Ind. Code § 35-42-3-3(b) (2006). We affirm.

## ISSUES

Basey raises three issues, which we consolidate and restate as:

I.     Whether the evidence is sufficient to sustain his convictions.

II.    Whether the court abused its discretion in ordering Basey to pay a public defender fee and court costs.

## FACTS AND PROCEDURAL HISTORY

On August 23, 2012, Officer Nick Oldham of the Elwood Police Department was on patrol and saw a white sedan disregard a stop sign. Oldham activated his lights and siren to signal the sedan to pull over. Instead of stopping, the driver of the sedan, who was later identified as Basey, tried to get away, and a chase ensued. Oldham requested assistance, and several other officers from various law enforcement agencies joined in the pursuit.

During the chase, Basey's speed exceeded 100 miles per hour. Officers twice put down spike strips ahead of Basey in attempts to puncture his tires and bring him to a stop. The first time he encountered a spike strip, he drove around it and continued fleeing. The second time, Basey lost control as he returned to the road and struck a utility pole while still going at a high rate of speed. The impact knocked down the pole and damaged the sedan, but Basey kept going until he slid into a grassy area and the sedan stopped.

2

Sergeant Steve Puente of the Alexandria Police Department ("APD") had joined the chase and was the lead pursuit vehicle when Basey stopped. Puente exited his vehicle and approached the sedan. He drew his handgun. Puente saw two people in the car, Basey and a female passenger later identified as Basey's wife, Jocelyn Bowyer. Bowyer was "screaming." Tr. p. 387. The sedan was still running and the tires were spinning, throwing up dirt and gravel as Basey attempted to gain traction. Puente made eye contact with Basey and ordered him to turn off the engine. Instead of complying, Basey turned the steering wheel toward Puente. The sedan moved in Puente's direction, so he sought cover by moving back toward his car. Basey drove the sedan within five feet of Puente. Puente fired ten shots at the sedan's tires as he sought cover, puncturing both tires on the passenger side.

Despite the damage caused by colliding with the utility pole and losing two tires, Basey returned to the road and continued fleeing from the officers. He was traveling around fifty miles per hour at that point. One of the pursuing officers, Michael Montgomery of the APD, used his car's public address system to order Basey to stop. In response, Basey stuck his left hand out of the window and extended his middle finger at Montgomery.

Basey drove into Anderson, Indiana, where traffic was heavier and other drivers had to pull off the road to avoid being struck. Indiana State Police Trooper David Preston passed the other pursuing officers and moved up next to Basey. Preston made eye contact with Basey, who swerved his sedan toward Preston before spinning around and turning down a side road. Next, Basey's sedan struck a cement culvert and finally

3

stopped. Basey jumped out of the vehicle, climbed over a fence, and ran into a wooded area near a golf course. Officers searched for him on foot, and he surrendered on the golf course one to two hours later.

Meanwhile, Oldham and other officers approached the sedan. Bowyer was still in the vehicle. She appeared to the officers to be "very . . . scared," "frantic, panicky . . . very shaken," and "crying and upset." *Id.* at 310, 371, 399. Bowyer told Puente, "I asked him to stop." *Id.* at 400.

After Basey was arrested, he was taken to a police station, where Oldham questioned him. Basey said during questioning that Bowyer told him several times to stop.

Later in the day, Basey called Bowyer from jail, and the State recorded the conversation. During the conversation, Basey said, "Oh my god, I forgot, I forgot you were in the car. Are you okay?" State's Ex. 8. Bowyer responded, "The only thing that's really messed up is my knee . . . ." *Id.*

The State charged Basey with attempted aggravated battery, criminal confinement resulting in bodily injury, resisting law enforcement as a Class D felony, and resisting law enforcement as a Class A misdemeanor. Bowyer did not testify at trial. The jury found Basey guilty as charged. The trial court merged the misdemeanor resisting count into the felony resisting count and sentenced Basey to an aggregate term of eighteen years, with three years suspended to probation. The court further ordered Basey to pay a public defender fee of $500 and court costs of $166. This appeal followed.

4

## DISCUSSION AND DECISION

## I. SUFFICIENCY OF THE EVIDENCE[1]

When reviewing a challenge to the sufficiency of the evidence underlying a conviction, we neither reweigh the evidence nor assess the credibility of witnesses. *Bailey v. State*, 979 N.E.2d 133, 135 (Ind. 2012). The evidence and all reasonable inferences drawn from it are viewed in a light most favorable to the verdict. *Id.* We affirm if there is substantial evidence of probative value supporting each element of the crime from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. *Id.*

## A. ATTEMPTED AGGRAVATED BATTERY

In order to obtain a conviction for attempted aggravated battery, the State was required to prove beyond a reasonable doubt that Basey: (1) engaged in conduct that constituted a substantial step toward (2) knowingly or intentionally (3) inflicting injury on a person (4) that created a substantial risk of death. Ind. Code §§ 35-41-5-1, 35-42-2-1.5. Intent and knowledge may be inferred from the circumstances and facts of each case. *Scott v. State*, 867 N.E.2d 690, 695 (Ind. Ct. App. 2007), *trans. denied*.

Basey asserts the State failed to prove that he knowingly or intentionally tried to hit Puente with his car. Puente testified that when the sedan stopped for the first time, he made eye contact with Basey and ordered him to turn off the engine. Instead of complying, Basey turned the steering wheel and drove the car directly at Puente. Oldham

---

[1] Basey does not challenge the sufficiency of the evidence supporting his conviction for resisting law enforcement.

saw the sedan's wheels turn toward Puente, and the sedan "move[d] in [Puente's] direction fairly quick" as Puente ran for cover. Tr. p. 239. Both Oldham and Puente were certain Basey was going to run over Puente unless he moved out of the way. According to Oldham, the sedan passed "within feet" of Puente, *id.* at 240, and Puente said it passed within five feet of him. This is ample circumstantial evidence from which a jury could reasonably conclude that Basey knowingly or intentionally tried to strike Puente with the sedan, an act which could have resulted in his death.

Basey testified that he did not intend to hit Puente, but rather was trying to get back on the road to continue fleeing. This argument is a request to reweigh the evidence. We must respect the jury's exclusive province to weigh conflicting evidence. *Rawson v. State*, 865 N.E.2d 1049, 1054 (Ind. Ct. App. 2007), *trans. denied*.

## B. CRIMINAL CONFINEMENT RESULTING IN BODILY INJURY

In order to obtain a conviction for criminal confinement resulting in bodily injury, the State was required to prove beyond a reasonable doubt that Basey: (1) knowingly or intentionally (2) confined a person (3) without the other person's consent (4) resulting in bodily injury to someone other than Basey. Ind. Code § 35-42-3-3(b). Bodily injury is defined as any impairment of physical condition, including physical pain. Ind. Code § 35-31.5-2-29 (2012).

Basey argues the State failed to prove that he confined Bowyer and that she was injured as a result of being confined. When Basey's sedan stopped for the first time and Puente approached it, he saw that Bowyer was screaming. After Basey abandoned the sedan at the end of the chase, several officers observed that Bowyer was scared, frantic,

6

crying, and upset. Bowyer told Puente that she had asked Basey to stop. Furthermore, Basey admitted to Oldham during post-arrest questioning that Bowyer had asked him several times to stop. This is sufficient evidence from which the jury could have reasonably concluded that Basey kept Bowyer in the car against her will.

Later on the day of the chase, Basey called Bowyer from jail. During their discussion, Basey remembered that she was in the car during the chase and asked if she was okay. She responded, "The only thing that's really messed up is my knee . . . ." State's Ex. 8. The jury could reasonably infer from this conversation that Bowyer injured her knee while she was confined in the car and thus sustained bodily injury as required by the statute. We affirm Basey's conviction for criminal confinement resulting in bodily injury.

## II. PUBLIC DEFENDER FEE AND COURT COSTS

Basey claims the trial court should not have ordered him to pay a $500 public defender fee and court costs of $166 without inquiring into his ability to pay. A trial court's imposition of fees and costs is reviewable for an abuse of discretion. *Mathis v. State*, 776 N.E.2d 1283, 1288 (Ind. Ct. App. 2002), *trans. denied*. If the court imposes fees and costs within the statutory limits, there is no abuse of discretion. *Kimbrough v. State*, 911 N.E.2d 621, 636 (Ind. Ct. App. 2009).

Two statutes are relevant to our inquiry. The first, Indiana Code section 33-40-3-6 (2004), provides in relevant part:

> (a) If at any stage of a prosecution for a felony or a misdemeanor the court makes a finding of ability to pay the costs of representation under section 7 of this chapter, the court shall require payment by the person or the

7

person's parent, if the person is a child alleged to be a delinquent child, of the following costs in addition to other costs assessed against the person:

> (1) Reasonable attorney's fees if an attorney has been appointed for the person by the court.

> (2) Costs incurred by the county as a result of court appointed legal services rendered to the person.

(b) The clerk of the court shall deposit costs collected under this section into the supplemental public defender services fund established under section 1 of this chapter.

The second statute, Indiana Code section 33-37-2-3 (2007), provides, in relevant part,

(a) Except as provided in subsection (b), when the court imposes costs, it shall conduct a hearing to determine whether the convicted person is indigent. If the person is not indigent, the court shall order the person to pay:

> (1) the entire amount of the costs at the time sentence is pronounced;
> (2) the entire amount of the costs at some later date; or
> (3) specified parts of the costs at designated intervals.

(b) A court may impose costs and suspend payment of all or part of the costs until the convicted person has completed all or part of the sentence. If the court suspends payment of the costs, the court shall conduct a hearing at the time the costs are due to determine whether the convicted person is indigent.

* * *

(e) If, after a hearing under subsection (a) or (b), the court determines that a convicted person is able to pay part of the costs of representation, the court shall order the person to pay an amount of not more than the cost of the defense services rendered on behalf of the person. The clerk shall deposit the amount paid by a convicted person under this subsection in the county's supplemental public defender services fund established under IC 33-40-3-1.

In this case, the trial court did not identify the statutory basis for imposing a public defender fee and court costs. In addition, during the sentencing hearing the court did not

8

inquire into Basey's ability to pay. However, the court's sentencing order directs that Basey's public defender fee, court costs, and other costs are "to be paid by defendant in equal monthly installments unless specified otherwise; must be paid in full 30 days before probation ends." Appellant's App. p. 65. Furthermore, the trial court stated in the probation order that Basey was obligated to pay the fee and costs.

We thus conclude that the court imposed the public defender fee and court costs upon Basey as conditions of probation. Basey will not begin serving probation until after completing the executed portion of his sentence. He therefore is not required to pay the fee or costs at this time. Under Indiana Code section 33-37-2-3(b), if the trial court suspends payment of costs, the court is not required to inquire into a defendant's ability to pay until the costs are due. As a result, the trial court did not abuse its discretion by not inquiring into Basey's ability to pay the public defender fee or court costs during sentencing. *See Rich v. State*, 890 N.E.2d 44, 48 (Ind. Ct. App. 2008) (no abuse of discretion for failing to consider at sentencing whether Rich could pay a public defender fee where payment of the fee was a condition of probation that took effect after Rich served the executed portion of his sentence), *trans. denied.*

### CONCLUSION

For the reasons stated above, we affirm the judgment of the trial court.

Affirmed.

FRIEDLANDER, J., and CRONE, J., concur.