## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 18 2019, 10:32 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Valerie K. Boots
Talisha Griffin
Marion County Public Defender Agency
Appellate Division
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Benjamin J. Shoptaw
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Denzel Drain,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

December 18, 2019

Court of Appeals Case No.
19A-CR-1551

Appeal from the
Marion Superior Court

The Honorable
Anne Flannelly, Magistrate

Trial Court Cause No.
49G04-1802-F5-7100

**Kirsch, Judge.**

[1] Denzel Drain ("Drain") was convicted of carrying a handgun without a license[1] as a Level 5 felony and was given a four-year sentence with two years executed in the Indiana Department of Correction ("the DOC") and two years served in the Marion County Community Corrections ("Community Corrections") work release program. Drain appeals and raises the following restated issues:

  I. Whether the trial court abused its discretion when it imposed a public defender fee; and

  II. Whether the trial court abused its discretion when it ordered Drain's bond money to be released to pay monetary obligations for Community Corrections without specifying the fees imposed and including calculation of those fees.

[2] We affirm in part, vacate in part, and remand.

## Facts and Procedural History

[3] On February 26, 2018, Indianapolis Metropolitan Police Department officers received a dispatch concerning a domestic disturbance. *Tr. Vol. 2* at 134. The officers were told that the name of the suspect was Drain and that he was a light-skinned, black male, with long dreadlocks wearing a black t-shirt. *Id.* at 136. The officers were informed that Drain was driving a 2006 Dodge Ram pick-up with a gold driver's side door. *Id.* The officers were also told that Drain may have a gun. *Id.* at 136-37. A couple of hours later, an officer

---

[1] *See* Ind. Code § 35-47-2-1.

observed a truck matching the dispatch description traveling on the road. *Id*. at 137-38.

[4] The officer followed the truck and ran the license plate to confirm it was the correct vehicle. *Id*. at 141. Once the officer confirmed that it was the correct truck registered to Drain, the officer waited for backup before initiating the traffic stop. *Id*. at 142-43. Drain failed to use a turn signal as he turned right, and the officers initiated a felony traffic stop due to the fact that Drain was believed to have a gun. *Id*. at 143-44. After removing Drain from the truck, the officers searched the truck and found a handgun under the dashboard above the brake pedal on the driver's side. *Id*. at 170-72.

[5] On February 28, 2018, the State charged Drain with Count I, Level 5 felony carrying a handgun without a license, Count II, Level 6 felony pointing a firearm, Count III, Class A misdemeanor domestic battery, and Count IV, Class A misdemeanor battery resulting in bodily injury. *Appellant's App. Vol. II* at 25-27. On March 23, 2018, Drain posted bond and was placed on pre-trial GPS monitoring. *Id*. at 44, 63. Prior to trial, the State dismissed Counts II, III, and IV. *Tr. Vol. 2* at 9. On May 23, 2019, a bifurcated jury trial was held on Count I, and the jury found Drain guilty of part 1 of the charge, carrying a handgun without a license. *Tr. Vol. 3* at 4. Drain then pleaded guilty to having a prior conviction in part 2 of the charge. *Id*. at 5. The trial court sentenced Drain to four years, with two years executed in the DOC and two years served in Community Corrections work release program with GPS monitoring. *Id*. at 33. Drain was also ordered to pay court costs and fees in the amount of $485,

which included a $100 public defender supplemental fund fee, a $220 safe school fee, and $185 in court costs. *Id*. at 34.

[6] On June 12, 2019, Community Corrections filed a memo with the trial court requesting the release of Drain's bond to Community Corrections. *Appellant's App. Vol. II* at 180. The memo stated that Drain "currently owes monetary obligations under this cause to Community Corrections in the amount of $2,180" and requested that Drain's bond be transferred to Community Corrections to "apply toward the outstanding balance of program costs associated with the service provided to [Drain]." *Id*. On the same date, the trial court issued an order to the clerk of the court to "apply the refund from the bond which was posted on March 23, 2018 to the outstanding balance of court costs and any and all court-ordered fees" and issued a separate order releasing the balance of Drain's bond to Community Corrections to be applied toward the outstanding balance of program costs. *Id*. at 181-82. Drain now appeals. Additional facts will be added as necessary.

## Discussion and Decision

## I.    Public Defender Fee

[7] Drain argues that the trial court abused its discretion when it ordered him to pay a $100 public defender fee without first determining his ability to pay the fee. "[S]entencing decisions, including decisions to impose restitution, fines, costs, or fees, are generally left to the trial court's discretion." *Kimbrough v. State,* 911 N.E.2d 621, 636 (Ind. Ct. App. 2009). We will not find an abuse of

discretion if the fees imposed by the trial court fall within the parameters provided by statute. *Holder v. State,* 119 N.E.3d 621, 624 (Ind. Ct. App. 2019). "A defendant's indigency does not shield him from all costs or fees related to his conviction." *Banks v. State, 847 N.E.2d 1050, 1051 (Ind. Ct. App. 2006), trans. denied.*

[8] Drain asserts that the trial court abused its discretion in imposing a $100 public defender fee because the trial court did not explicitly find that Drain could pay the fee imposed. Drain contends that, under Indiana Code section 33-37-2-3(a), the trial court was required to hold a hearing to determine whether he was indigent before imposing any court costs. Because the trial court did not conduct a hearing regarding Drain's indigency and ability to pay the public defender fee when it imposed court costs at the sentencing hearing, Drain argues that the order imposing the $100 public defender fee should be vacated and remanded for the trial court to hold such a hearing.

[9] Although Drain is correct in his assertion that Indiana Code section 33-37-2-3(a) provides that when a trial court imposes costs, it is required to conduct a hearing to determine whether a convicted person is indigent, this requirement is not applicable to the present case. In *Wright v. State*, 949 N.E.2d 411 (Ind. Ct. App. 2011), this court held that "the indigency requirement of Indiana Code section 33-37-2-3(a) does not apply when a defendant has entered into a cash bail bond agreement pursuant to Indiana Code section 35-33-8-3.2(a)(2)." *Wright*, 949 N.E.2d at 416. Indiana Code section 35-38-8-3.2(a)(2) does not contain any language requiring an indigency hearing, and *Wright* found that

imposing the hearing requirement of Indiana Code section 33-37-2-3(a) where a defendant executed an agreement pursuant to Indiana Code section 35-33-8-3.2(a)(2), would render the bail bond agreement meaningless. *Wright*, 949 N.E.2d at 416. Further, this court has previously recognized that, when a defendant posts a cash bail bond pursuant to Indiana Code section 33-37-8-3.2, the trial court has the authority to impose public defender costs. *See Turner v. State*, 755 N.E.2d 194, 200 (Ind. Ct. App. 2001) ("Trial courts may deduct additional money to cover public defender costs from a defendant's posted cash bond pursuant to Indiana Code Section 35-33-8-3.2. Such is not the case here, however, as Turner posted no bond and was incarcerated following his arrest through the conclusion of his trial."), *trans. denied*.

[10] Here, Drain executed a cash bond agreement on March 23, 2018, and in doing so, he agreed to give the trial court authority to retain all or part of the $2,000 placed in escrow to pay publicly paid costs of representation, fines, costs, fees, and restitution if he failed to appear or was convicted. *Appellant's App. Vol. II* at 63. Drain was convicted of Level 5 felony carrying a handgun without a license on May 23, 2019, and, therefore, the trial court had the authority to use the bond money held in escrow to pay the public defender fee pursuant to the cash bond agreement. Drain entered into the cash bond agreement, a contract, and he is bound by its terms, which are authorized by statute. We, therefore, conclude that the trial court did not abuse its discretion when it ordered Drain to pay the $100 public defender fee and applied his bond to pay that fee.

## II. Release of Bond to Community Corrections

[11] Generally, the setting of the amount of bail is within the discretion of the trial court and will be reversed only for an abuse of discretion. *Lopez v. State*, 985 N.E.2d 358, 360 (Ind. Ct. App. 2013). Likewise, the trial court has discretion in the manner of executing the bail money. *Winn v. State*, 973 N.E.2d 653, 656 (Ind. Ct. App. 2012). An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. *Id.* at 655.

[12] Drain argues that the trial court abused its discretion when it released the balance of his bond to Community Corrections to pay the requested fees because there was no review conducted of the requested fees. Drain asserts that he did not owe any pretrial service fees to Community Corrections and that Community Corrections never petitioned the trial court to impose fees for GPS monitoring. He also contends that the trial court did not impose fees or costs for his placement in the Community Corrections work release program at the sentencing hearing, and at the time his bond was released to Community Corrections, he had not begun serving his time in the work release program and did not owe any fees for that program. Therefore, he maintains that the imposition of the fees requested by Community Corrections exceeded statutory authority and was an abuse of discretion.

[13] As discussed above, Indiana Code section 35-33-8-3.2(a)(2) states in pertinent part that a trial court "may admit a defendant to bail and . . . require the defendant to execute . . . an agreement that allows the court to retain all or a

part of the cash or securities to pay fines, costs, fees, and restitution that the court may order the defendant to pay if the defendant is convicted." Drain executed a cash bond agreement, which contained this statutory language, and he was convicted of Level 5 felony carrying a handgun without a license. Therefore, the trial court had the authority to apply Drain's bond to any Community Corrections fees he was ordered to pay.

[14] Under Indiana Code section 35-33-8-3.2(a)(5), when a trial court admits a defendant to bail, it can "[p]lace the defendant under the reasonable supervision of a probation officer, pretrial services agency, or other appropriate public official. If the court places the defendant under the supervision of a probation officer or pretrial services agency, the court shall determine whether the defendant must pay the pretrial services fee." After Drain was sentenced, Community Corrections requested that the remaining bond be applied "toward the outstanding balance of program costs associated with the service provided to [Drain]." *Appellant's App. Vol. II* at 180. As a condition of his pre-trial release, Drain was ordered to be placed on GPS monitoring, and Community Corrections charged Drain $5 a day for supervising the GPS monitoring. *Appellant's App. Vol. II* at 44, 63, 186-87; *Supp. Tr. Vol. 2* at 8.

[15] The State concedes, however, that the trial court did not clearly state at the sentencing hearing that it was imposing fees for Drain's pre-trial GPS monitoring as required under statute. *See* Indiana Code § 35-33-8-3.2(a)(5). The sentencing order did not contain any calculation or mention of fees to be paid to Community Corrections. *Appellant's App. Vol. II* at 18-19, *Tr. Vol. 3* at

33-34.  Only after sentencing did the trial court issue an order that the balance of Drain's bond be applied to his outstanding Community Corrections costs without clearly stating what fees the trial court was imposing or including any calculation of those fees.  *See Appellant's App. Vol. II* at 180-81.  We, therefore, conclude that the trial court abused its discretion in issuing this order.  We vacate the trial court's order and remand to the trial court to hold a hearing to impose fees consistent with the statutory guidelines.

[16]  Affirmed in part, vacated in part, and remanded.

Bailey, J., and Mathias, J., concur.