Terry BERRY, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A04–0402–CR–122.

Court of Appeals of Indiana.

Dec. 16, 2004.

444

Kimberly A. Jackson, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Justin F. Roebel, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Following a jury trial, Terry Berry ("Berry") was convicted of Attempted Aggravated Battery, as a Class B felony,[1] and the trial court sentenced him to twelve years. Berry now appeals and presents the following issues for our review:

1. Whether the State presented sufficient evidence to sustain his conviction.

2. Whether the trial court abused its discretion when it imposed a twelve-year sentence.

We affirm.

### FACTS AND PROCEDURAL HISTORY

On September 15, 2003, Lee Berry ("Lee") and April Taylor were outside Gerald James' home at 2708 North Winthrop in Indianapolis when Lee's brother, William Berry ("Willie"), drove past them in his red Jeep Cherokee. After Willie noticed Taylor waving to him, he parked in a vacant lot across the street from James' residence and next to a house owned by Kenny Gamble ("Gamble"). Shortly thereafter, Gamble and his brother, Berry, who are first cousins to Lee, drove up the street in Gamble's red Chevy Blazer. As Gamble was driving, he yelled at Lee, "[Y]ou're not going to be in this neighbor[hood][.] I don't want you over here." Transcript at 54. Lee replied, "[W]ho do you think you're talking to because you

don't even live over here. You can't tell somebody to come to where they don't live." *Id.* Gamble then parked his vehicle nearby, and Lee and Gamble continued their argument in the street.

The cousins' verbal altercation escalated when Gamble hit Lee. In response, Lee backed up and repeatedly told Gamble that he did not want to fight. But when Gamble pursued Lee, he kicked Gamble, and the two began to wrestle. Willie suggested to Berry that they intervene, but Berry rejected his suggestion, stating only, "[L]et them fight." *Id.* at 92. Despite Berry's response, Willie attempted, unsuccessfully, to separate the two. Subsequently, Lee punched Gamble in the eye, causing it to bleed. At that point, Gamble left to retrieve a baseball bat from his vehicle, and Lee walked down the street. As Gamble used the bat to repeatedly strike the bicycle that Lee had ridden over to James' house, Berry followed Lee, and when he finally caught up with Lee, Berry threatened to kill him. Lee then proceeded to walk away through an alley.

After Berry returned, Gamble tossed him the keys to the Blazer and told him to drive. Gamble then went to the back of his house and retrieved a shotgun, which he loaded as he walked through his yard. They entered the vehicle, and Berry sped off. As Berry drove the Blazer into the alley where Lee was walking, Gamble fired his shotgun out the passenger window.

Lee began running away, and his two cousins continued to chase him. Willie then drove up to Lee, and, as Lee approached Willie's Jeep, Gamble exited the Blazer and fired another shot, which hit Lee in the buttocks. That same shot also hit one of the Jeep's tires and its radiator. Lee entered the Jeep, but then quickly

---

1. An attempt to commit a crime is a felony of the same class as the crime attempted, and aggravated battery is a Class B felony. Ind. Code §§ 35–42–2–1.5, 35–41–5–1(a).

exited the vehicle and began to run away once he realized that Berry and Gamble had pulled up alongside the Jeep. Again, Gamble left the Blazer and attempted to fire the shotgun, but, initially, it jammed. Gamble then fired the gun a third time, and Lee, who had been hit in the wrist, leg, and buttocks, was knocked to the ground. At that point, Gamble returned to the Blazer, and Berry drove him from the scene.

The State charged Berry with Attempted Murder, as a Class A felony, under a theory of accomplice liability. Following a two-day trial that began on December 29, 2003, the jury acquitted Berry of attempted murder but found him guilty of the lesser-included offense of attempted aggravated battery. At the sentencing hearing on February 5, 2004, the trial court issued the following sentencing statement:

> The Court will consider the risk the defendant will commit another crime, as the statute requires, and find that it is great. Mr. Berry's conduct has been a fairly—bespeaks a fairly constant involvement in the criminal justice system. He was also on parole on the day that this happened.
>
> In terms of the defense argument concerning the State's earlier offer, the— I'm not sure if I would characterize what happened with that plea the same way as defense counsel would. Basically, it was Mr. Berry's position that he didn't know anything, or he can't read someone's mind, or something like that. And at the time of that rejection—I mean, that's certainly his right. He went to jury trial, and he has the right to a jury trial. But, in addition to the family members in this case, the State provided testimony from some disinterested in probably two senses of the word. [Sic] They knew all sides of the dispute. But, also, they really didn't want to be here.

> And one of the—because they just didn't really want to be involved. [Sic] But, they were consistent and the Court found them to be very credible. And their testimony supported some involvement of Terry Berry a little bit earlier on in the dispute. And moreover, they were all entirely consistent about the number of shots fired. So, if Mr. Berry is confused about what he did, the first thing he did was seeing [sic] his brother carrying a shotgun, put those keys in the ignition[,] and take off. The second thing he did was continue to drive. The third thing he did was continue to drive after his brother had shot once at his cousin. And then [he] pulled up to the scene of the sort of stand off at the end of the whole thing where [Lee] was actually struck, I believe.
>
> So, those were some continued, the continued conduct that makes this—I agree with you, though Mr. Rodriguez. I will say his brother is telling him what to do. It's his big brother. Drive the car. Drive the car. He's listening. That was what the evidence was in this case. And in fact, it's what his brother testified to at the trial, that he told him to do these things. And he, of course, complied. That is classic assisting under Indiana law. Assisting is knowingly helping, or aiding. And he knowingly helped.
>
> I think there was temper. I think there was anger. There may not have been, certainly on Mr. Berry's part who I think was a little bit more operating in the heat of the moment, the intent to kill. And the jury's verdict certainly supported that; that the State did not prove that Mr. Berry, as would be required by law, had the specific intent to have his cousin killed. But it is his cousin. And it's just an awfully silly way to try to resolve the dispute over a bike or money or who is smoking crack in

whose driveway. I don't care. It doesn't justify this type of conduct.

And moreover, there were a number of people outside on this day. And shooting a shotgun in a neighborhood with a bunch of people outside poses a risk. And you were assisting someone who is shooting a shotgun in a neighborhood, Mr. Berry, poses a risk. [Sic] So, the nature and circumstances of the crime aren't quite as short-lived as defense counsel argues. There were a series of decisions made, albeit, I'm sure under pressure and under the heat of the moment. But, I think the consideration for that is supported in the jury's verdict to this lesser-included offense versus the A misdemeanor.

Your criminal history is significant. It is escalating. But, I—in the Court's view, the jury's verdict in this case was a just one. I do find an aggravated sentence to be appropriate, but not the maximum sentence.

Transcript at 300–04. The trial court then imposed a sentence of twelve years executed.[2]

## DISCUSSION AND DECISION

### Issue One: Sufficiency of the Evidence

Berry first contends that the State presented insufficient evidence to support his conviction for attempted aggravated battery. When reviewing a claim of insufficient evidence, we neither reweigh evidence nor judge the credibility of witnesses. *Grim v. State,* 797 N.E.2d 825, 830 (Ind.Ct.App.2003). We consider only the evidence which is favorable to the verdict along with the reasonable inferences to be drawn therefrom to determine whether there was sufficient evidence of probative value to support a conviction. *See id.* We will affirm the conviction if there is substantial evidence of probative value from which a reasonable trier of fact could have drawn the conclusion that the defendant was guilty of the crime charged beyond a reasonable doubt. *Id.*

■ A person commits the crime of aggravated battery when he knowingly or intentionally inflicts injury on a person that creates a substantial risk of death or causes (1) serious permanent disfigurement, (2) protracted loss or impairment of the function of a bodily member or organ, or (3) the loss of a fetus. Ind.Code § 35–42–2–1.5. To establish an attempt, the State must prove that the defendant acted with the culpability required for commission of the crime and that he engaged in conduct that constituted a substantial step toward the commission of the crime. *See* Ind.Code § 35–41–5–1(a); *Cohen v. State,* 714 N.E.2d 1168, 1178 (Ind.Ct.App.1999), *trans. denied.* In other words, attempted aggravated battery occurs when a person knowingly or intentionally takes a substantial step toward inflicting an injury that creates a substantial risk of death or an injury which would cause serious permanent disfigurement, the protracted loss or impairment of the function of a bodily member or organ, or the loss of a fetus. *See Meriweather v. State,* 659 N.E.2d 133, 141 (Ind.Ct.App.1995), *trans. denied.*

■ The State sought to convict Berry as an accomplice. To do so, the State needed to prove that Berry knowingly or intentionally aided, induced, or caused another person to commit attempted aggravated battery, regardless of whether that other person had been prosecuted, convict-

---

2. The presumptive sentence for a Class B felony is ten years, but a trial court can add an additional ten years to that presumptive sentence for aggravating circumstances. Ind. Code § 35–50–2–5.

ed or acquitted of that offense. *See* Ind. Code § 35–41–2–4; *Sanquenetti v. State,* 727 N.E.2d 437, 441 (Ind.2000). There is no separate crime of being an accessory or aiding and abetting the perpetrator of a crime; rather a defendant may be convicted as a principal upon evidence that he aided or abetted in the perpetration of the charged crime. *Turner v. State,* 755 N.E.2d 194, 198 (Ind.Ct.App.2001), *trans. denied.* The individual who aids another person in committing a crime is as guilty as the actual perpetrator. *Id.* Under accomplice liability, an accomplice is criminally responsible for all acts committed by a confederate which are a probable and natural consequence of their concerted action. *McGee v. State,* 699 N.E.2d 264, 265 (Ind.1998) (quotations omitted). The accomplice need not participate in each and every element of the crime in order to be convicted of it. *See Hodge v. State,* 688 N.E.2d 1246, 1248 (Ind.1997). Mere tangential involvement in the crime can be sufficient to convict a person as an accomplice. *See Ajabu v. State,* 693 N.E.2d 921, 937 (Ind.1998).

■ In determining whether a person aided another in the commission of a crime, our supreme court has long considered the following four factors: (1) presence at the scene of the crime; (2) companionship with another engaged in criminal activity; (3) failure to oppose the crime; and (4) a defendant's conduct before, during, and after the occurrence of the crime. *See Garland v. State,* 788 N.E.2d 425, 431 (Ind.2003). While the defendant's presence during the commission of the crime or his failure to oppose the crime are, by themselves, insufficient to establish accomplice liability, the jury may consider them along with other facts and circumstances tending to show participation. *Hodge,* 688 N.E.2d at 1248. In order to sustain a conviction as an ac-

complice, there must be evidence of the defendant's affirmative conduct, either in the form of acts or words, from which an inference of common design or purpose to effect the commission of a crime may be reasonably drawn. *Peterson v. State,* 699 N.E.2d 701, 706 (Ind.Ct.App.1998). But it is not necessary for the State to show that a defendant was a party to a preconceived scheme; it must merely demonstrate concerted action or participation in an illegal act. *Tynes v. State,* 650 N.E.2d 685, 687 (Ind.1995).

■ Here, the State presented evidence to that: (1) Berry witnessed the fight between Lee and Gamble and rejected Willie's suggestion that they break it up; (2) Berry threatened to kill Lee; (3) Gamble threw his car keys to Berry and told him to drive; (4) Gamble entered the Blazer with a loaded shotgun; (5) Berry sped into the alley where Lee was walking; (6) Berry continued to chase Lee in the Blazer after Gamble fired the shotgun out the passenger window; (7) Berry stopped the vehicle once Lee approached Willie's Jeep; (8) Gamble exited the Blazer and shot at Lee, causing injury to Lee's buttocks and damaging Willie's car; (9) Berry drove Gamble closer to the Jeep, which Lee had entered; (10) Gamble again exited the Blazer and fired a third shot at Lee, injuring his leg, wrist, and buttocks; and (11) Berry drove Gamble from the scene of the crime.

Still, Berry contends that he did not possess the requisite culpability to be convicted of attempted aggravated battery as Gamble's accomplice and that the sole act of driving Gamble's vehicle was "not sufficient under [those] circumstances to impose accessory liability on [him]." Brief of Appellant at 10. We disagree.

The facts of this case are analogous to the facts in *Kendall v. State.* 790 N.E.2d 122. There, the defendant and two other

men had been informed that they were no longer welcome in the residence where they had often stayed. *See id.* at 125. The next day, the defendant drove the other two men back to the residence and waited in the vehicle while they exited, stood on the porch of the house, and shot through the screen door at the thirteen-year-old girl who lived there. *Id.* at 125, 132. While the defendant did not fire any shots, "[he] did nothing to oppose the commission of the crime[ ] ... and did not drive away in surprise when [the men] started shooting." *Id.* Rather, he drove the two men from the scene of the crime. *Id.* For the foregoing reasons, we affirmed his conviction for aggravated battery as an accomplice despite the lack of any evidence to suggest that he encouraged the shooters or that he had contact with the weapons used in the crime. *See id.*

Like the defendant in *Kendall,* Berry never fired the gun used to commit the crime. But, in both cases, the defendants drove the shooters to and from the scene of the crime. Significantly, Berry *continued* to drive in pursuit of Lee even after Gamble had already fired shots at him. With Lee on foot and Berry racing after him in a car, Berry enabled Gamble to shoot at Lee and minimized Lee's chance to escape. Berry did not simply fail to oppose the commission of the crime; Berry *actively* participated in it. That Berry did not verbally encourage Gamble or fire the gun himself is not dispositive. *See McGee,* 699 N.E.2d at 266 (affirming attempted murder conviction under accomplice liability theory where defendant "did not use the knife himself" but did threaten to kill victim, beat him, and restrain him so that second man was able to inflict nearly-

fatal knife wounds); *Gardner v. State,* 724 N.E.2d 624, 626–27 (Ind.Ct.App.2000), *trans. denied* (affirming involuntary manslaughter convictions under accomplice liability theory where defendants did not strike victim's head or have any contact with the metal pole used to inflict fatal blow to victim's head but "were present at the crime scene, participated in the attack, did not oppose or try to stop the beating, and afterwards were laughing"); *Cohen,* 714 N.E.2d at 1178–79 (affirming attempted murder conviction under accomplice liability theory where defendant chased victim, tackled him, and restrained him so that third man was able to shoot victim in the head).

Berry's conduct before, during, and after the shooting is fully consistent with that of an accomplice. We therefore conclude that the State presented sufficient evidence to support his conviction for attempted aggravated battery as an accomplice. Berry's arguments amount to a request that we reweigh the evidence and assess witness credibility, which we will not do.

### Issue Two: Sentencing

Berry next argues that the trial court abused its discretion when it imposed an enhanced sentence.[3] Specifically, he asserts that (1) the trial court's sentencing statement is defective both because it did not identify aggravating or mitigating circumstances with sufficient specificity and because it did not list the incidents comprising Berry's criminal history, and (2) Berry's enhanced sentence violates *Blakely v. Washington,* —— U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), *reh'g denied.* We address those arguments in turn.

---

3. Again, the presumptive sentence for attempted aggravated battery is ten years, and, here, the trial court increased the presumptive sentence by two years for aggravating circumstances. *See* I.C. § 35-50-2-5.

## A. Sentencing Statement

 Determining the appropriate sentence is within the trial court's discretion, and the trial court will be reversed only upon a showing of manifest abuse of discretion. *Bacher v. State*, 722 N.E.2d 799, 801 (Ind.2000).[4] The trial court is not required to state a basis for imposing the presumptive sentence for a conviction. *Hardebeck v. State*, 656 N.E.2d 486, 491 (Ind.Ct.App.1995), *trans. denied.* However, when the court exercises its discretion to enhance a presumptive sentence, the record must disclose the factors the court considered to justify the imposition of an enhanced sentence. *Id.* When imposing an enhanced sentence, the trial court must identify all significant aggravating and mitigating circumstances, give specific reasons why each factor is so identified, and balance the aggravating and mitigating circumstances to determine whether the former outweigh the latter. *Brown v. State*, 698 N.E.2d 779, 781 (Ind.1998). Any factors not found to be mitigating do not have to be listed nor is an explanation required as to why mitigating circumstances were not found. *Brown*, 698 N.E.2d at 783. And although there may be several aggravating circumstances, "[o]nly one valid aggravator is needed to sustain an enhanced sentence." *Jones v. State*, 600 N.E.2d 544, 548 (Ind.1992) (quoting *Reaves v. State*, 586 N.E.2d 847, 852 (Ind.1992)).

 There are two purposes for requiring the reasoned sentencing statement. *Hardebeck*, 656 N.E.2d at 491. One, it safeguards against the imposition of arbitrary and capricious sentences because it insures that the sentencing judge only considered proper matters when imposing sentence. *Id.* Two, the statement allows a reviewing court to determine the reasonableness of the imposed sentence. *Id.* at 491–92. Where the record indicates that the trial court did engage in the evaluative processes but simply did not articulate sufficiently the reasons for sentence enhancement, and the record indicates that the sentence was not manifestly unreasonable, then the purposes underlying the specificity requirement are satisfied. *Jones*, 600 N.E.2d at 548. Accordingly, our supreme court has held that under those circumstances, remand is unnecessary. *See Meriweather*, 659 N.E.2d at 145.

 Here, it is apparent from the face of the record that the trial court identified three aggravating circumstances: (1) the risk that Berry would commit another crime; (2) the nature and circumstances of the offense; and (3) Berry's criminal record.[5] The trial court first discussed the "risk the defendant will commit another crime . . . and [found] that it is great." Transcript at 300–01. Immediately thereafter, the court mentioned Berry's "constant involvement in the criminal justice system" and the fact that he was on parole the day Lee was shot. Transcript at 301.[6] Those statements support the conclusion that there was a substantial risk that Berry would commit another crime. The court next discussed the nature and circumstances of the crime when it emphasized the biological relationship between Lee and Berry, the "silly" cause of the dispute, and the number of people in the neighborhood who were outside at the time

---

4. For a discussion of *Blakely's* impact on the trial court's ability to impose enhanced sentences, see Part B, *infra.*

5. All three are factors which the trial court must consider before imposing a sentence. *See* Ind.Code § 35–38–1–7.1(a).

6. As Berry acknowledges in his brief, aggravating circumstances include recent parole violations and a history of criminal activity. *See* I.C. §§ 35–38–1–7.1(b)(1), (2).

of the shooting and whose lives were thereby endangered. *Id.* at 303. Finally, the trial court observed that Berry's criminal history is "significant" and "escalating." *Id.* Therefore, we conclude that the trial court's sentencing statement sufficiently articulated its reasons for finding the risk that Berry would commit another crime, the nature and circumstances of the offense, and Berry's criminal history to be aggravating circumstances.[7]

Berry further alleges that "[t]he trial court never specified it had weighed the mitigating and aggravating circumstances." Brief of Appellant at 16. But the trial court did not find any mitigating circumstances in this case. While the trial court did note that "[t]here were a series of decisions made . . . under pressure and under the heat of the moment," it went on to state that that consideration was reflected in the jury's decision to find Berry guilty of attempted aggravated battery rather than attempted murder. Transcript at 302–03. Given the statement as a whole, it seems clear that the trial court intended to explain its reason for not finding Berry's state of mind to be a mitigating factor, despite no requirement that it supply an explanation. *See Brown,* 698 N.E.2d at 783 ("Any factors not found to be mitigating do not have to be listed nor is an explanation required as to why mitigating circumstances were not found."). When no mitigating circumstances are found, a trial court need not engage in a balancing calculus because the presence of even one aggravating circumstance is a sufficient basis for imposing an enhanced sentence. *See Buchanan v. State,* 699 N.E.2d 655, 657 (Ind.1998) ("One aggrava-

tor is sufficient to support the enhancement of a sentence."). We conclude that the trial court engaged in the required evaluative process and that the purposes underlying the specificity requirement have been satisfied.

■ Berry also argues that the sentencing statement was defective because it did not list the incidents comprising Berry's criminal history. Where the trial court enhances a sentence due to the defendant's prior criminal record, we require that the trial court detail such activity, and not merely recite statutory language. *Day v. State,* 669 N.E.2d 1072, 1073 (Ind. Ct.App.1996) (citing *Mundt v. State,* 612 N.E.2d 566, 568 (Ind.Ct.App.1993), *trans. denied* ). However, in non-death penalty cases it is sufficient if the trial court's reasons for enhancement are clear from a review of the sentencing transcript. *Id.*

■ Here, the trial court did not detail Berry's criminal history in its sentencing statement, but the pre-sentence report reveals that it is substantial. Berry, who is only twenty-eight years old, has already accumulated a criminal record consisting of convictions for dealing in cocaine, possession of cocaine, and possession of alcohol by a minor and delinquency adjudications for possession of cocaine, illegal possession of a handgun, auto theft,[8] criminal trespass, and truancy. Moreover, the pre-sentence report was discussed extensively at the sentencing hearing, and Berry's counsel conceded that the trial court could properly enhance the sentence given Berry's criminal history. Indeed, at the hearing, Berry's

---

7. We likewise reject the State's assertion that the trial court identified Berry's criminal history as the sole aggravating circumstance in this case.

8. At the sentencing hearing, Berry challenged the auto theft adjudication, arguing that "he was actually joy riding." Transcript at 291. But that argument does not affect our analysis because his criminal record is extensive even apart from the auto theft adjudication

counsel stated, *"We know that [Berry's] criminal history is there; that the Court may aggravate the sentence;* and that a presumptive on this is ten years." Transcript at 297 (emphasis added). Berry cannot now claim that the trial court erred when it relied on his criminal history.

### B. *Blakely v. Washington*

Berry next asserts that the trial court violated the new rule of law announced in *Blakely* when it imposed a twelve-year sentence, which is two years beyond the presumptive sentence for a Class B felony. In response, the State first argues that Berry waived that argument because he did not raise the issue at sentencing. Alternatively, the State makes the following claims: (1) *Blakely* does not apply to Indiana's sentencing scheme, and (2) *Blakely* does not apply to Berry's sentence because "the only aggravating circumstance found by the trial court was [Berry's] criminal history." Brief of Appellee at 9.[9] Without deciding the issue of waiver, we choose to address Berry's *Blakely* claim on the merits.

In *Blakely*, the Supreme Court relied on the rule set forth in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), to declare Washington's sentencing scheme unconstitutional. *Blakely*, 124 S.Ct. at 2543. That rule provides: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 124 S.Ct. at 2536 (quoting *Ap-*

*prendi*, 530 U.S. at 490, 120 S.Ct. 2348). At issue in *Blakely* was the definition of "statutory maximum." The Court explained that "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*" *Id.* at 2537 (emphasis in original). "In other words," said the *Blakely* Court, "the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings." *Id.* (emphasis in original).

### Indiana's Sentencing Scheme

The State argues that Indiana's sentencing scheme differs from the one struck down in *Blakely* and that it therefore does not run afoul of the Sixth Amendment. Specifically, it asserts that "*Blakely* does not require jury findings under Indiana's sentencing scheme" because a "presumptive" sentence is no more than a guidepost which enables the trial court to impose an appropriate sentence. Brief of Appellee at 9. But in *Strong v. State*, 817 N.E.2d 256 (Ind.Ct.App.2004), another panel of this court recently addressed this very issue and concluded that *Blakely* does apply to Indiana's sentencing scheme. Indeed, our sentencing scheme is similar to the one struck down in *Blakely*.

Under Washington law, a Class B felony is punishable by a term of imprisonment not to exceed ten years, and the petitioner in *Blakely* pled guilty to second-degree kidnapping with a firearm, as a Class B felony. *See id.* at 2534–35.[10] However,

---

**9.** As we have previously noted, we disagree with the State's argument that the trial court enhanced Berry's sentence based solely on his criminal history. The trial court also identified two other aggravators, namely, the risk that Berry would commit another crime and the nature and circumstances of the crime.

*See* discussion pertaining to the sentencing statement, *supra.*

**10.** In his plea agreement, Blakely also admitted that the kidnapping was a crime of domestic violence. *Blakely*, 124 S.Ct. at 2535.

the "standard range" of punishment for that offense is forty-nine to fifty-three months. *Id.* Prior to *Blakely,* the Washington system also permitted a judge to impose a sentence beyond the standard range if he found "substantial and compelling reasons justifying an exceptional sentence." *Id.* There, the judge found that Blakely had acted with "deliberate cruelty," a statutory aggravator, and sentenced Blakely to ninety months, thirty-seven months beyond the standard range but thirty months short of the ten-year cap. The Supreme Court rejected the State's argument that the statutory maximum was ten years rather than fifty-three months, and held that the ninety-month sentence violated Blakely's Sixth Amendment right to a jury trial because the judge enhanced his sentence based on a factor not admitted by Blakely or submitted to a jury and proven beyond a reasonable doubt. *See id.* at 2537–38.[11]

Here, the presumptive sentence for a Class B felony is ten years, but a trial court can add an additional ten years to that presumptive sentence for aggravating circumstances or subtract four years from that presumptive sentence for mitigating circumstances. Ind.Code § 35–50–2–5. The State argues that the six to twenty year range of punishment for Class B felonies is equivalent to Washington's forty-nine to fifty-three month "standard range" of punishment for second-degree kidnapping with a firearm. But the fact that our statutory regime provides a *range* of possible sentences is not dispositive.

■ Under Indiana Code Section 35–50–2–5, "A person who commits a Class B felony *shall* be imprisoned for a *fixed* term of ten (10) years, *with not more than ten (10) years added for aggravating circumstances* or not more than four (4) years subtracted for mitigating circumstances." *Id.* (emphases added). We agree with Berry that the plain language of Indiana Code Section 35–50–2–5 requires the trial court to impose a ten-year sentence on a person who commits a Class B felony, absent any aggravating or mitigating circumstances. That is, a defendant will automatically receive a sentence of ten years *unless* the trial court finds aggravating or mitigating circumstances. Any upward or downward adjustment to that ten-year "presumptive" sentence is a deviation from the "standard" sentence.

■ In Indiana, the presence of a single aggravating circumstance may lead to an "enhanced" sentence, i.e., one greater than the presumptive sentence, just as the presence of an aggravating circumstance justifies the imposition of sentence above the forty-nine to fifty-three month standard range sentence under the Washington regime.[12] Thus, Indiana's presumptive sentence constitutes the *Blakely* "statutory maximum." *See Strong,* 817 N.E.2d 256, 261 (Ind.Ct.App.2004); *Holden v. State,* 815 N.E.2d 1049, 1059 n. 6 (Ind.Ct. App.2004). We therefore reject the State's assertion that the presumptive sentence functions as a sentencing guidepost

11. As mentioned above, the trial court enhanced Blakely's sentence based solely on its finding of deliberate cruelty. Although Blakely had admitted that he had used a firearm in the commission of the crime and that the crime was an act of domestic violence, the Supreme Court noted that neither factor is a proper aggravator. *See Blakely,* 124 S.Ct. at 2537–38. Use of a firearm is considered an element of the offense to which Blakely pled guilty, and domestic violence justifies sentence enhancement only when it is paired with at least one other aggravating factor. *See id.*

12. Indeed, the very phrase "enhanced sentence," which the State uses repeatedly in its brief, emphasizes the upward departure from the standard, or "presumptive," sentence.

for Indiana trial courts. Consistent with our decision in *Strong,* we hold that *Blakely* prohibits our courts from imposing a sentence greater than the presumptive one based on a factor not admitted by the defendant or submitted to a jury and proven beyond a reasonable doubt.[13]

## Use of Aggravating Circumstances to Enhance Sentence

■ Finally, Berry argues that the trial court violated *Blakely* when it imposed a twelve-year sentence based on the aggravators other than Berry's criminal history. Pursuant to *Blakely,* the trial court may not impose a sentence greater than the presumptive sentence unless: (1) the facts supporting an enhanced sentence are found by a jury or admitted by the defendant; (2) the defendant has a criminal history; or (3) the defendant has waived his right to a jury at sentencing. *See Blakely,* 124 S.Ct. at 2536–37, 2541.

■ As we discussed in Part A of this section, the trial court enhanced Berry's sentence based on three aggravators, namely, the risk that he would commit another crime, the nature and circumstances of the offense, and his criminal history. Clearly, Berry's prior criminal history does not trigger a *Blakely* analysis. The second aggravating circumstance, the risk that Berry would commit another crime, also falls outside the scope of *Blakely.* The trial court based its assessment of the likelihood that he would commit another crime on his "constant involvement in the criminal justice system," an observation derived from Berry's criminal history, and Berry's admission that he was on probation at the time of the offense. Accordingly, the risk that Berry would commit

another crime is not subject to the *Blakely* analysis.

■ Unlike the previous two aggravators, however, the third aggravator relied upon by the trial court, the nature and circumstances of the offense, does violate the *Blakely* holding. At the sentencing hearing, the trial court emphasized the biological relationship between Lee and Berry, the "silly" cause of the dispute, and the number of people in the neighborhood who were outside at the time of the shooting and whose lives were thereby endangered. While Berry admitted that Lee is his cousin, it does not appear that the jury made findings regarding the reason for the altercation or the presence of neighbors outside at the time of the shooting. Thus, pursuant to *Blakely,* those facts were not a proper basis for imposing an enhanced sentence.

■ Nonetheless, "a single aggravating circumstance is adequate to justify a sentence enhancement." *Powell v. State,* 769 N.E.2d 1128, 1135 (Ind.2002). Thus, Berry's criminal history, alone, is a sufficient basis for imposing an enhanced sentence. *See Bledsoe v. State,* 815 N.E.2d 507, 508 (Ind.Ct.App.2004), *opinion on reh'g.* The presence of a second aggravating circumstance, the risk that Berry would commit another crime, indicates that there is no reasonable possibility that the nature and circumstances aggravator contributed to the slight enhancement of Berry's sentence. *See Holden,* 815 N.E.2d at 1060 (presence of three different aggravating circumstances sufficient to uphold enhanced sentence despite trial court's improper reliance on other aggravators).[14]

---

13. Again, "prior convictions shown by a defendant's criminal history are exempt from the *Apprendi* rule as clarified by *Blakely.*"

*Bledsoe v. State,* 815 N.E.2d 507, 508 (Ind.Ct. App.2004), *opinion on reh'g.*

14. Again, Indiana Code Section 35–50–2–5 permits trial courts to increase the presump-

The trial court's improper reliance on the nature and circumstances of the offense is not dispositive, and we hold that the trial court did not err when it imposed an enhanced sentence for attempted aggravated battery.

### CONCLUSION

The State presented sufficient evidence to convict Berry of attempted aggravated battery, and the trial court did not abuse its discretion when it sentenced Berry to twelve years, two years beyond the presumptive sentence for that crime. Further, the sentencing statement was adequate. Finally, while *Blakely* applies to Indiana's sentencing scheme, it does not affect Berry's sentence. For the foregoing reasons, we affirm Berry's conviction and his twelve-year sentence.

Affirmed.

SULLIVAN, J., and BARNES, J., concur.

tive sentence by ten years. But, here, the trial court decided to enhance Berry's sentence by only two years. Given the relatively short enhancement, we are confident that his sentence would not be different if the improper aggravator were disregarded.