Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEYS FOR APPELLANT:

**BENJAMEN W. MURPHY**
Law Office of Ben Murphy
Merrillville, Indiana

**KEVIN MILNER**
Crown Point, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MICHAEL GENE WORDEN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| LYNDON C. DAVIS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 45A04-1304-CR-207 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable Clarence D. Murray, Judge
Cause No. 45G02-1107-MR-5

**March 5, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**SHEPARD, Senior Judge**

Lyndon Davis challenges the sufficiency of the evidence supporting his conviction of murder.  We affirm.

## FACTS AND PROCEDURAL HISTORY

Davis was involved with Terrell Wells and Philip Blake in a drug-dealing operation.  Wells was the leader, with Blake under him, followed by Davis.  On the side, Blake also worked with Parrish Myles.

Following a disagreement over the whereabouts of some drugs and/or drug money, Wells put a bounty on Myles.  Davis met Wells at a park where they discussed the bounty.  Davis, who resides in Chicago, then accompanied Wells and some other men to Griffith, Indiana where Myles lived.  Wells took Davis to an apartment complex and showed him where Myles resided, all the while stressing that Myles needed to die.

Davis' uncle, Robert Davis ("Robert"), did not know Myles, but Davis informed him of the bounty.  Davis then rode with Robert to show him where Myles lived.  Once there, Davis pointed out Myles' vehicle, and Robert parked nearby.  Robert then retrieved a t-shirt and hat from the trunk of his car, and the two men sat in the car for several minutes.  Myles emerged from his apartment with his two children and spoke to Davis and Robert before he began walking to his vehicle.  At that point, Robert exited the car and shot Myles.

Davis then moved to the driver's seat, Robert jumped into the passenger seat, and they drove away.  Once in the car, Robert changed his shirt and hat, presumably to change his appearance during the getaway.  A police pursuit ensued, and Davis exited the

2

car, taking Robert's discarded shirt and hat with him. Davis called Wells for a ride and was apprehended when Wells came to pick him up.

Myles died from the gunshot wounds. The State charged Davis with murder and a jury found him guilty as an accomplice. *See* Ind. Code §§ 35-42-1-1 (2007), 35-41-2-4 (1977). He now appeals.

## ISSUE

Davis contends the evidence is insufficient to prove that he aided, induced, or caused the commission of murder.

## DISCUSSION AND DECISION

When reviewing claims of insufficiency of the evidence, we neither weigh the evidence nor judge the credibility of the witnesses. *Caruthers v. State*, 926 N.E.2d 1016 (Ind. 2010). If there is substantial evidence of probative value from which a reasonable trier of fact could find guilt beyond a reasonable doubt, we will affirm the conviction. *Id.*

Indiana Code section 35-42-1-1 provides that a person commits murder when he knowingly or intentionally kills another human being. Pursuant to the theory of accomplice liability, a person who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense. Ind. Code § 35-41-2-4.

To determine whether a person aided another in the commission of a crime, we consider four factors: (1) presence at the scene of the crime; (2) companionship with another engaged in the crime; (3) failure to oppose the commission of the crime; and (4) course of conduct before, during, and after the occurrence of the crime. *Blakney v. State*, 819 N.E.2d 542 (Ind. Ct. App. 2004). While the person's presence at the scene or failure

3

to oppose the crime, by themselves, are insufficient to establish accomplice liability, they may be considered along with other facts and circumstances to determine participation. *Smith v. State*, 809 N.E.2d 938 (Ind. Ct. App. 2004), *trans. denied*. To sustain a conviction as an accomplice, there must be evidence of the person's affirmative conduct or words, from which an inference of common design or purpose to commit the offense may be reasonably drawn. *Berry v. State*, 819 N.E.2d 443 (Ind. Ct. App. 2004), *trans. denied*.

With regard to the four factors set out above, the evidence here demonstrates that Davis was at the scene of the murder and that he arrived and departed with his uncle Robert, the principal actor in Myles' murder. Davis did not oppose the commission of the murder. Rather, he sat in the car and watched Robert approach and shoot Myles. Myles' daughter testified that from her vantage point in Myles' vehicle she could see Myles, Robert, and Davis. She saw Myles talk to both Robert and Davis before he was shot, she saw Robert shoot Myles, and she saw Davis move into the driver's seat of the car before they left the parking lot. Although Davis claims he could not see what Robert was doing from where he sat in the parked car, we think this is a judgment about the credibility of the witnesses that falls within the jury's exclusive province to weigh conflicting evidence. *See Collier v. State*, 846 N.E.2d 340 (Ind. Ct. App. 2006), *trans. denied*.

Concerning the fourth factor, Davis' claim on appeal is that he did not know there would be a shooting until it happened.[1]

Davis relies on *Garland v. State*, 719 N.E.2d 1236 (Ind. 1999), in which our Supreme Court reversed, finding insufficient evidence to prove the defendant knowingly or intentionally aided, induced, or caused another to commit murder. In *Garland*, a young man undergoing substance abuse counseling came to know that the counselor had developed a relationship with his mother and that the counselor planned to kill his father. Asked whether he would assist, Garland said he would not, but neither did he tell his father of the apparent plan.

When the counselor drove up to the family residence on the day of the killing, the mother went out to see him, and the father asked Garland to go outside to see what was transpiring. The counselor told Garland to stay outside unless he wanted to be involved, after which he went into the house and shot the father.

Garland surely allowed the crime to happen, but the evidence in this case was sufficient to allow the jury to conclude that Davis was the person who actually engineered the killing even though Robert fired the fatal shots. The evidence establishes that Robert neither knew Myles nor knew about the bounty. It is Davis who knew Myles, Davis who told Robert about the bounty, Davis who accompanied Robert to Griffith, and Davis who showed him where Myles lived. After driving the getaway car, Davis exited the vehicle with the shirt and hat Robert had been wearing when he shot the victim.

---

[1] Davis' early position was even stronger. When originally interviewed by police, Davis told them Robert picked him up "out of the blue" to take a ride with him because he had to go see someone. State's Ex. 92. Davis said he had never been to Griffith before riding there with his uncle.

## CONCLUSION

We therefore affirm Davis' conviction of murder as an accomplice.

RILEY, J., and PYLE, J., concur.