FILED

Dec 12 2019, 9:06 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

R. Brian Woodward
Crown Point, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Tiffany A. McCoy
Deputy Attorney General

Molly M. McCann
Certified Legal Intern
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Javier Antonio Zavala,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

December 12, 2019

Court of Appeals Case No.
19A-CR-558

Appeal from the Lake Superior
Court

The Honorable Diane Ross
Boswell, Judge

Trial Court Cause No.
45G03-1407-FB-48

**Darden, Senior Judge.**

# Statement of the Case

[1] Javier Antonio Zavala appeals challenging his sentence after he pleaded guilty to one count of battery causing serious bodily injury,[1] a Class C Felony.[2] We affirm.

# Issues

[2] Zavala raises two sentencing issues, which we restate as the following questions:

    I.    Did the trial court abuse its discretion by failing to accept a proffered mitigating circumstance?

    II.    Is Zavala's sentence inappropriate in light of the nature of the offense and the character of the offender?

# Facts and Procedural History

[3] On July 1, 2014, Zavala was charged with one count of aggravated battery as a Class B felony, one count of battery committed by means of a deadly weapon, a Class C felony, and one count of battery resulting in serious bodily injury, a Class C felony. He was arrested on July 23, 2014 and posted bond on July 24, 2014. Numerous continuances were requested and granted as follows: (1) September 12, 2014 Zavala's motion to continue the omnibus hearing was

---

[1] Ind. Code § 35-42-2-1(a)(3) (2012).

[2] Ind. Code § 35-50-2-6 (2005).

granted; (2) October 2, 2014 Zavala's motion to continue was granted; (3) December 9, 2014 Zavala's motion to continue was granted; (4) June 15, 2015 Zavala's motion to continue the pre-trial conference was granted; (5) July 9, 2015 Zavala's motion to vacate the jury trial date was granted; (6) August 27, 2015 Zavala's request to reset the jury trial date was granted; (7) October 13, 2015 Zavala's motion to continue was granted; (8) November 17, 2015 Zavala's motion to continue was granted; (9) January 7, 2016 Zavala's request to reset an omnibus hearing was granted; (10) March 9, 2016 Zavala's request to reset the omnibus hearing was granted; (11) April 13, 2016 Zavala's motion to continue was granted; (12) June 8, 2016 Zavala's request to reset a hearing was granted; (13) July 21, 2016 Zavala's request to reset the omnibus hearing was granted; (14) October 5, 2016 Zavala's request to reset the omnibus hearing was granted; (15) November 17, 2016 Zavala's request to reset a status hearing was granted; (16) December 21, 2016 Zavala's request to reset a hearing was granted; (17) February 15, 2017 Zavala's motion to continue was granted; (18) April 20, 2017 Zavala's motion to continue was granted; (19) December 4, 2017 Zavala's motion to continue was granted; (20) January 8, 2018 Zavala's request to reset the final pre-trial conference was granted; (21) January 25, 2018 Zavala's request to reset the jury trial date was granted; (22) April 12, 2018 Zavala's request to reset the final pre-trial conference was granted; (23) April 25, 2018 Zavala's motion to reset the jury trial was granted; (24) August 9, 2018 Zavala's motion to continue was granted; (25) September 6, 2018 Zavala's motion to set for a change of plea was granted; (26) November 14, 2018 due to time constraints the trial court reset the date for acceptance of Zavala's plea and

completion of sentencing hearing; and (27) December 11, 2018 Zavala's motion to continue the sentencing hearing was granted.

[4] Zavala pleaded guilty to battery causing serious bodily injury as a Class C felony on September 6, 2018. His sentencing hearing was held on November 14, 2018–to accommodate the victim who lived out of state and wished to testify–and February 8, 2019–to complete the presentation of evidence and arguments of counsel. We will refer to the facts set forth in Zavala's stipulated guilty plea agreement, the stipulated factual basis, and testimony at the sentencing hearings.

[5] On June 15, 2014, Zavala was present at the 3900 block of Deodar Street in East Chicago, Lake County, Indiana. On that date and at that location Zavala used a handgun to shoot Shaun Tucker multiple times. Tucker suffered gunshot wounds to his right lower flank, the left side of his umbilical area, the right lower quadrant of his abdomen, the anterior/lateral part of his right thigh, his posterior right thigh, the dorsal surface of his right forearm, the volar surface of his right forearm and a graze wound to his left wrist.

[6] On November 14, 2018, Tucker testified that the gunshot striking his right forearm "blew a hole through my arm, so I'm losing mobility now." Tr. Vol. II, p. 24. He further testified that he had two gunshot wounds striking his stomach and that "there's a bullet still in my - - by my spine that they left it in." *Id.* He had six surgeries to address his injuries from the gunshot wounds and was eight months away from having a surgery on his forearm "where they open

it up and they take the nerves and pull them out because the scar tissue keeps growing over it." *Id.*

[7] As for the mental impact of being shot multiple times, he testified that he does not go outside at night, preferring to stay at home with his children. He stated that the fireworks on the Fourth of July "makes me weird" and that "a lot of loud noises, they're offensive." *Id.* at 25.

[8] Tucker testified that he is right-handed and with the injuries to his right forearm it is difficult to work. He stated, "I'm a laborer, union, so I can't really do that anymore because the nerves, they end up like - -feels like there's a lot of tingling in my hands so I lose my hammer, drop the sledge hammer or something like that." *Id.* at 26.

[9] When asked his opinion about what sentence Zavala should receive for his crime, Tucker indicated, "I think he should go to prison. I mean, if it was me, I'd be in prison, you know. I think he should go to prison really, sit and think about what he did. At least he gets to come back out. I mean, I died three times on the way to the hospital, so I might not have made it you know. I mean, he's still got a chance to come out." *Id.*

[10] On cross-examination, Tucker testified that he knew Zavala. When asked what Zavala's reputation was on the streets, he responded, "[h]e didn't like to fight. He would go run and get the pistol." *Id.* at 29. He further testified that Zavala told Tucker "he won't fight nobody my size, he'll go get the pistol." *Id.* at 30.

He further clarified that Zavala told him that Zavala was "little, he would not fight, he would just go and get the pistol and shoot the person." *Id.* at 31.

[11] On February 8, 2019, the second phase of the sentencing hearing was held. Rosario Miranda, one of Zavala's sisters, testified. She testified that her family had immigrated to the United States from Mexico. There were six members in her family: Zavala, Miranda, a sister and a brother and their mother and father. Each of them had become citizens of the United States.

[12] Miranda testified that the language barrier was tough on each of the children but was especially difficult for Zavala. She stated, "He had that language barrier. He was overweight, so he was picked on and bullied in grade school, and unfortunately due to that he turned to people that he [could] connect to, gangs." *Id.* at 43. "It was a gang . . . that also spoke Spanish that made him feel comfortable, welcome, protected." *Id.* at 44. He was around thirteen years old when he joined "the Latin Kings." *Id.* at 44, 54. Zavala, who was in the eighth grade, was expelled from school for a fight.

[13] Zavala's parents discovered that he was in a gang when he was in his 20's "and tried to do their best to lead him away from that lifestyle and to better himself." *Id.* at 44. Zavala's parents' first plan of action was to try to separate him from the gang by sending him to Mexico to spend some months with grandparents and other relatives. After returning from Mexico, he spent some time with family who live in Waukegan, Illinois. "They were just trying to keep him busy, occupied away from the negativity." *Id.* at 45.

[14] The State asked Miranda if she was aware of Zavala's history of criminal activity. She acknowledged knowing about only some of his criminal activity. In particular, the State asked if she knew about his guilty plea in 2007 for domestic battery as a misdemeanor instead of a felony. Miranda stated that she vaguely remembered it and that it involved Tiara, the mother of Zavala's children who live out of state. Her description was that "He had a toxic relationship". *Id.* at 56. In November of 2010, he was involved in another case in which he was charged with strangulation and domestic battery. He pled guilty to the domestic battery charge as a misdemeanor instead of a felony. In June of 2011, Zavala was charged with domestic battery and invasion of privacy. He pled guilty to domestic battery as a misdemeanor. She was not sure if she was aware of another matter in March of 2013, in which Zavala was charged with escape for having jumped out of a moving ambulance after having been arrested. In that case, he pleaded guilty to a charge of failure to return to lawful detention. Miranda asked the trial court for leniency for her brother in the present case.

[15] Zavala, who could have faced a minimum sentence of two years and a maximum sentence of eight years, was facing a maximum sentencing cap of six years under the terms of the plea agreement. Zavala's counsel argued that Zavala was remorseful for his crime, that the crime was the result of circumstances that are unlikely to recur, that he acted "under strong provocation", *id.* at 61, that he was likely to respond affirmatively to probation or short-term incarceration in community corrections, and that imprisonment

would result in undue hardship to his children and family. Instead of asking for a specific number of years on his sentence, Zavala's counsel argued in favor of placement in community corrections.

[16] The State argued that the harm, injury, loss, or damage suffered by Tucker was significant and greater than the elements necessary to prove the commission of the offense. The State also referenced Zavala's criminal history of violent crimes. Zavala was on probation at the time he committed the offense at issue. The State asked for the imposition of the full, six years incarcerated in the Department of Correction.

[17] The trial court's oral sentencing statement follows:

> And, you know, I had the thought when you guys were arguing these things that certainly if everyone had the opportunity to have four years pass after their crime, they could change their life and we could empty the jails, we could empty the prisons. . . .and many people can. I mean, give somebody four years and they've got hanging over their head the possibility of being in prison for eight, they could change their life, and while I can appreciate what he's done, and it sounds like he's been very successful, this violent crime can't just be ignored and say, Well, it's okay. You shot the man four times, two times, six times, whatever, however many times it was it doesn't matter, and we're just going to - - we're just going to say no problem with that now because you're a better person. You won't shoot him again or you won't shoot anybody again and let it go. It's unfortunate that we can't do that.

> Mr. Zavala, you have to pay a penalty for what you did even though you're not that person today. You know, there has to be some accountability. And to just walk away and say, Oh, my life

is just a little bit changed because I'm in Community Corrections and I'm in Work Release and I work every day and go home and, you know, I'm - - my life is still pretty much the same as it was at the time of this crime, it's just not justice. It's not justice.

So today I'm going to sentence you to your - - on the plea of guilty to Count III, battery resulting in serious bodily injury as a Level C felony, to five years in the Department of Corrections, two and a half years to be served in DOC and two and a half years to be served in Lake County Community Corrections.

The Court finds that you have two days in custody on this matter plus two days. . . .Four days credit.

[A probation officer informed the trial court that] He has actually spent almost four years additional time on probation, so at this time we were willing to just discharge him unsatisfactorily from probation.

[The trial court stated] Well, even more reason. Alright. On the probation violation, probation recommends - - that's in short Cause 08, probation recommends that he be discharged unsatisfactorily from probation and that he receive no further sanction.

*Id.* at 74-77. Zavala now appeals.

# Discussion and Decision

## I. Abuse of Discretion in Sentencing

[18] In this appeal, Zavala contends that the trial court abused its discretion by failing to accept a proffered mitigating circumstance. More specifically, Zavala argues that the trial court should have identified his pre-sentencing rehabilitation efforts as a significant mitigating circumstance.

[19]     "Indiana trial courts are required to enter sentencing statements whenever imposing sentence for a felony offense." *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (2007). "[T]he statement must include a reasonably detailed recitation of the trial court's reasons for imposing a particular sentence." *Id.*

[20]     "[S]entencing decisions rest within the sound discretion of the trial court and are reviewed on appeal only for an abuse of discretion." *Id.* "An abuse of discretion occurs if the decision is 'clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom.'" *Id.* (quoting *K.S. v. State*, 849 N.E.2d 538, 544 (Ind. 2006) (quoting *In re L.J.M.*, 473 N.E.2d 637, 640 (Ind. Ct. App. 1985))).

> One way in which a trial court may abuse its discretion is failing to enter a sentencing statement at all. Other examples include entering a sentencing statement that explains reasons for imposing a sentence–including a finding of aggravating and mitigating factors if any–but the record does not support the reasons, or the sentencing statement omits reasons that are clearly supported by the record and advanced for consideration, or the reasons given are improper as a matter of law. Under those circumstances, remand for resentencing may be the appropriate remedy if we cannot say with confidence that the trial court would have imposed the same sentence had it properly considered reasons that enjoy support in the record.

*Id.* at 490-91.

[21]     "Because the trial court no longer has any obligation to 'weigh' aggravating and mitigating factors against each other when imposing a sentence, unlike the pre-*Blakely* statutory regime, a trial court can not now be said to have abused its discretion in failing to 'properly weigh' such factors. *Id.* at 491.

[22]     "A trial court's consideration of factors may be evidenced in either the written order or in an oral sentencing statement." *Anderson v. State*, 989 N.E.2d 823, 826 (Ind. Ct. App. 2013), *trans. denied*. "In reviewing a sentencing decision in a non-capital case, we are not limited to the written sentencing statement but may consider the trial court's comments in the transcript of the sentencing proceedings." *Corbett v. State*, 764 N.E.2d 622, 631 (Ind. 2002). "Where the record indicates that the trial court did engage in the evaluative processes but simply did not articulate sufficiently the reasons for sentence enhancement, and the record indicates that the sentence was not manifestly unreasonable, then the purposes underlying the specificity requirement are satisfied." *Berry v. State*, 819 N.E.2d 443, 452 (Ind. Ct. App. 2004), *trans. denied*. "Accordingly, our supreme court has held that under those circumstances, remand is unnecessary." *Id.*

[23]     "Because reasonable minds may differ due to the subjectivity of the sentencing process, it is generally inappropriate for us to merely substitute our opinions for those of the trial judge." *Corbett*, 764 N.E.2d at 630. "The trial court sits in the best position to weigh any conflicting evidence and assess the credibility of the witnesses." *Wilfong v. Cessna Corp.*, 838 N.E. 2d 403, 407 (Ind. 2005).

[24] Indiana Code section 35-38-1-7.1 (2014) sets forth aggravating and mitigating circumstances a trial court may consider in deciding whether to impose a sentence other than the presumptive sentence or to impose consecutive sentences. *Echols v. State*, 722 N.E.2d 805, 808 (Ind. 2000). "[T]he court is obligated neither to credit mitigating circumstances in the same manner as would the defendant, nor to explain why he or she has chosen not to find [a] mitigating circumstance." *Bacher v. State*, 722 N.E.2d 799, 804 (Ind. 2000).

[25] "Indiana law, however, mandates that the trial judge not ignore facts in the record that would mitigate an offense, and a failure to find mitigating circumstances that are clearly supported by the record may imply that the trial court failed to properly consider them." *Sherwood v. State*, 749 N.E.2d 36, 38 (Ind. 2001). "The trial court is not obligated to accept the defendant's contentions as to what constitutes a mitigating factor." *Gross v. State*, 769 N.E.2d 1136, 1140 (Ind. 2002). "Nor is the court required to give the same weight to proffered mitigating factors as the defendant does." *Id.*

[26] Here, although not obligated to do so, the trial court explained to Zavala that she acknowledged the great strides he had made to improve himself in the time between when he committed the crime and the time of sentencing. However, it is clear in her oral statement that she gave it no weight. Implicitly recognizing the lapse of time due to numerous continuances, most if not all at Zavala's request, the trial court noted that most people facing the possibility of a six-year sentence executed in the Department of Correction (under the plea agreement; 8 years under the statute) could modify their behavior over the course of four

years. She further indicated her opinion that though Zavala today was not the man he was at the time of the commission of the offense, he must still be held accountable for what he had done at the time of the crime.

[27] Considering pre-sentencing rehabilitation, as is permitted, *cf. Livingston v. State*, 113 N.E. 3d 611, 614 (Ind. 2018) (shortening the defendant's sentence due to pre-sentence rehabilitation), the trial court explained that a "violent crime [involving shooting another person repeatedly] can't just be ignored . . .because [now] you're a better person". Tr. Vol. II, p. 75. The trial court evaluated the aggravating and mitigating factors and found that the favorable plea agreement, short sentence for repeatedly shooting Tucker resulting in lasting injuries, and the benefit of being placed in community corrections for half of his sentence, were more significant than the value of the accomplishment of significant rehabilitation over the course of four years.

[28] While the trial court's oral and written sentencing statements could be more detailed, we conclude that the trial court did not abuse its discretion by considering but rejecting Zavala's efforts at pre-sentencing rehabilitation as a significant mitigating factor in light of the very serious nature of his offense.

## II. Inappropriate Sentence

[29] Next, Zavala argues that his sentence is inappropriate in light of the nature of the crime and the character of the offender. More specifically, Zavala contends that both his character during the pre-sentencing rehabilitative process and the trial court's error in assessing the nature of the offense merit a revision of his

sentence to the advisory sentence of four years incarcerated in community corrections.

[30] "Although a trial court may have acted within its lawful discretion in determining a sentence, Article VII, Section 4 and 6 of the Indiana Constitution 'authorize[] independent appellate review and revision of a sentence imposed by the trial court.'" *Anglemyer*, 868 N.E.2d at 491. "This appellate authority is implemented through Appellate Rule 7(B), which provides that the 'Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender.'" *Id.* (internal citations omitted). "Of course a defendant must persuade the appellate court that his or her sentence has met this inappropriateness standard of review." *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006).

[31] Under Appellate Rule 7(B), the question is "not whether another sentence is more appropriate" but rather "whether the sentence imposed is inappropriate." *King v. State*, 894 N.E.2d 265, 268 (Ind. Ct. App. 2008). Whether a sentence should be deemed inappropriate turns on the sense of culpability of the defendant, the severity of the crime, the damage done to others, and other factors. *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008). We may consider whether a portion of the sentence is ordered suspended or is otherwise fashioned to using any of the variety of sentencing tools available to the trial judge. *Davidson v. State*, 926 N.E.2d 1023, 1025 (Ind. 2010).

[32] The nature of the offense analyzes the defendant's action in comparison with the elements of the offense. *Cardwell*, 895 N.E.2d at 1224. Zavala was convicted of battery resulting in serious bodily injury as a Level C felony. Indiana Code section 35-50-2-6 carries a possible sentence of between two and eight years with an advisory sentence of four years. Zavala's plea agreement capped his sentence at six years. Zavala was sentenced to a total of five years with two and one-half years to be served in the Department of Correction followed by two and one-half years to be served at community corrections.

[33] "The nature of the offense is found in the details and circumstances of the commission of the offense and the defendant's participation." *Perry v. State*, 78 N.E.3d 1, 13 (Ind. Ct. App. 2017). The details and circumstances of Zavala's crime include that he was in a car when the altercation with Tucker started. Instead of driving away, Zavala intentionally shot Tucker numerous times, hitting him multiple times in the abdomen, thigh, forearm, and wrist. Those shots resulted in serious bodily injury to Tucker. Tucker nearly died and was revived three times during the trip to the hospital. He suffered eight different gunshot wounds from the shots fired by Zavala. Tucker has undergone six surgeries on his right forearm to repair the damage caused by the injuries inflicted by Zavala's gunshots.

[34] Zavala's actions, specifically choosing to shoot Tucker numerous times instead of driving away from the altercation and the serious bodily injury resulting from those shots, support the trial court's sentencing decision in the middle of the sentencing range with half suspended to community corrections.

[35] As for the character of the offender, we refer to "general sentencing considerations and the relevant aggravating and mitigating circumstances." *Douglas v. State*, 878 N.E.2d 873, 881 (Ind. Ct. App. 2007). A defendant's criminal history is relevant to review of his character. *Sanders v. State*, 71 N.E.3d 839, 844 (Ind. Ct. App. 2017), *trans. denied*.

[36] Zavala has a history of committing violent crimes. He has three misdemeanor convictions for battery and domestic battery and a felony conviction for failure to return to lawful detention. His felony conviction was based on his actions of jumping from a moving ambulance after having been arrested. A record of arrests reflects on the defendant's character in part because such record reveals that subsequent antisocial behavior by the defendant has not been deterred even having been subject to police authority and having been made aware of its oversight. *Pickens v. State*, 767 N.E.2d 530, 534 (Ind. 2002). Zavala has also been charged with multiple other offenses including resisting law enforcement, criminal mischief, interference with the reporting of a crime, disorderly conduct, stalking, harassment, intimidation, strangulation, and invasion of privacy. The bulk of those charges were dismissed as a result of plea agreements and deferrals. Additionally, Zavala has violated probation and was on probation at the time he committed the offense at issue here.

[37] Furthermore, Zavala was affiliated with the Latin Kings gang for at least seven years beginning when he was thirteen years old and ending when he parents intervened and sent him to live with other family members in Mexico and

Illinois. Zavala's street reputation was one of choosing to use his pistol to shoot someone instead of engaging in physical fights.

[38] Zavala's criminal history, gang affiliation, and reputation reflect poorly on his character.

[39] Zavala argues that incarceration will result in an undue hardship on his family, particularly his five children. We note that "[m]any persons convicted of crimes have dependents, and absent special circumstances showing that the hardship to them is 'undue,' a sentencing court does not abuse its discretion by not finding this to be a mitigating factor." *Benefield v. State*, 904 N.E.2d 230, 247 (Ind. Ct. App. 2009), *trans. denied*.

[40] Here, Zavala has sole custody of only one of his five children and the other four children live with their mothers. Zavala admitted that he has not seen his two oldest children in over a year and sees his other two children a couple of times each year. Zavala is $7,000.00 in arrears on child support payments for his two oldest children. Additionally, Zavala and his son live with his parents and sister. Zavala's son could continue to live in the same home with Zavala's family, with Zavala's parents caring for him during Zavala's short period of incarceration in the Department of Correction. We conclude that these circumstances do not rise to the level of undue hardship.

[41] Next, Zavala attempts to place his character in a positive light due to his pre-sentencing rehabilitation. His positive reports, while admirable, do not support an argument that his sentence is too harsh, and, therefore, inappropriate. In

exchange for his plea, the State dismissed two counts against him, and the trial court sentenced Zavala within the sentencing cap provided for in the plea agreement. His lenient sentence for his serious and reckless criminal conduct is not too harsh.

[42] "[M]any people are gainfully employed such that this would not require" employment being noted as a mitigating factor. *Newsome v. State*, 797 N.E.2d 293, 301 (Ind. Ct. App. 2003). Zavala's steady self-employment does not mean that he should not be punished for the serious crime he committed against Tucker.

[43] We disagree with Zavala's argument that the trial court erred as a matter of law by ordering a period of incarceration. He claims that the "trial court was apparently under the impression that because an individual was shot, [] the trial court was compelled to sentence Zavala to a period of incarceration." Appellant's Br. p. 15. He supports his argument by lifting the trial court's comment "[i]t's unfortunate that we can't do that" from the oral sentencing statement. *Id.* (citing Tr. Vol. II, p. 75). Placed in context, the trial court commented that the trial court felt compelled to sentence Zavala to a period of incarceration because it could not disregard the extremely serious nature of the offense Zavala committed, even when factoring in his pre-sentencing efforts at rehabilitation.

Based on the foregoing, we find that Zavala has not met his burden of persuading us that his sentence is inappropriate in light of the nature of the offense and the character of the offender.

# Conclusion

We conclude that the trial court did not abuse its discretion in sentencing Zavala, nor is his sentence inappropriate in light of the nature of the offense and the character of the offender.

Affirmed.

Riley, J., and Bradford, J., concur.